## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 1:11-Civ-21155-Moore/Torres

RODOVALDO RODY GOMEZ, SABY GOMEZ
DE MOLINA, RODY GOMEZ A/K/A RODY
GOMEZ JR.,

                          Plaintiffs,

           v.

D.B. ZWIRN SPECIAL OPPORTUNITIES FUND
L.P.,

                          Defendant.

_____/

## DEFENDANT'S AMENDED MOTION TO TRANSFER
## PURSUANT TO 28 U.S.C. §§ 1404(A) AND 1406(A)
## AND INCORPORATED MEMORANDUM OF LAW

Defendant Fortress Value Recovery Fund I LLC f/k/a D.B. Zwirn Special

Opportunities Fund, L.P. ("Defendant"), by and through its undersigned counsel, respectfully

moves to amend Defendant's removed Motion to Dismiss For Improper Venue (Docket Entry

("DE") #1, at Ex. G), and submits this Amended Motion pursuant to 28 U.S.C. §§ 1404(a) and

1406(a) to transfer the above-captioned action, brought by plaintiffs Rodovaldo Rody Gomez,

Saby Gomez de Molina, and Rody Gomez a/k/a Rody Gomez Jr. (collectively, "Plaintiffs"), to

the United States District Court for the Southern District of New York.

## STATEMENT OF FACTS

Defendant was a lender to several trucking companies and dealerships owned and

operated by Rody Truck Enterprises, Inc. ("Borrowers") pursuant to a Financing Agreement

dated June 29, 2007.  (Compl. ¶ 14.)  When Borrowers triggered certain events of default under

the Financing Agreement, the parties entered into two forbearance agreements -- the first on

November 16, 2007 and the second on December 26, 2008 -- pursuant to which Defendant ultimately agreed to forebear from exercising its remedies under the Financing Agreement against Borrowers until January 31, 2009.  (See id. at Composite Ex. 1 at Ex. A ("Settlement Agreement"), at 1-2.)  Upon Borrowers' continued triggering of certain events of default and upon the expiration of the second forbearance agreement, Defendant declared all obligations pursuant to the Financing Agreement immediately due and payable.  (Id.)

On February 17, 2009, Defendant entered into a Settlement Agreement with Borrowers.  (See Compl. ¶ 16.)  Plaintiffs further executed the Settlement Agreement as Borrowers' guarantors.  (See id.)  Pursuant to the Settlement Agreement's forum-selection clause, any dispute "arising out of or related" to the Settlement Agreement would be subject to the exclusive jurisdiction of New York state or federal courts, and would be governed under New York law.  (See Settlement Agreement, at § 19.)

As a guarantor to the Settlement Agreement, each Plaintiff additionally signed a confession of judgment for $2 million, "attached as part of the Settlement Agreement."  (See Compl. ¶ 16.)  The confessions of judgments could be enforced against Plaintiffs in the Supreme Court of the State of New York, County of New York, upon the triggering of one of the events of default enumerated in Section 5 of the Settlement Agreement ("Events of Default").  (See id.; Settlement Agreement, at § 5.)  On February 1, 2011, Defendant sent Plaintiffs a Notice of Default, as prescribed by the Settlement Agreement, informing them that Borrowers and the Plaintiffs had violated several provisions of the Settlement Agreement.  (See Compl. ¶¶ 23-24; id at Composite Ex. 1 at Ex. D ("Notice of Default"); Settlement Agreement, at §§ 5(a)-(b), 15.)  When Plaintiffs failed to cure the defaults, Defendant filed Plaintiffs' confessions of judgment with the County Clerk's Office for the Supreme Court of the State of New York, and received a

final judgment for $2 million against each Plaintiff.  (See Compl. ¶¶ 37-38.)  On February 23, 2011, the final judgments against Plaintiffs were recorded by the Clerk of Circuit and County Courts for Miami-Dade County, Florida.  (See id. ¶¶ 40-41.)

On March 24, 2011, Plaintiffs filed a Verified Complaint against Defendant in the Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, Florida (Case No. 11-09152-CA-40), asserting causes of action for (i) an action in opposition to the enforcement of the foreign judgment, pursuant to Fla. Stat. § 55.509 (Count I); (ii) declaratory relief (Count II); (iii) defamation (Count III); (vi) breach of implied covenant of good faith and fair dealing in contract (Count IV); (v) abuse of process (Count V); and (vi) fraud (Count VI).  (See DE #1 at Ex. B.)  At the time Plaintiffs commenced this action, Defendant was a limited liability company organized under the laws of the State of Delaware with its principal place of business in New York.  (See Compl. ¶¶ 4, 16.)  Plaintiffs were and are residents of Miami-Dade County, Florida. (See Compl. ¶¶ 1-3.)

On April 1, 2011, Defendant filed a motion to dismiss the Verified Complaint for improper venue pursuant to Fla. R. Civ. P. 1.140(b)(3) and 28 U.S.C. § 1406.  (See DE #1 at Ex. G.)  Defendant subsequently filed a Notice of Removal of the Plaintiffs' state court action, pursuant to 28 U.S.C. §§ 1331, 1332, 1334, 1441, 1446, and 1452.  (DE #1.)  Having removed the action to federal court, Defendant now files an amended motion to transfer the action to the

United States District Court for the Southern District of New York, pursuant to 28 U.S.C. §§ 1404(a) and 1406(a).[1]

## THE ACTION SHOULD BE TRANSFERRED TO NEW YORK PURSUANT TO 28 U.S.C. §§ 1404(A) AND 1406(A)

The action should be transferred to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. §§ 1404(a) or 1406(a) because the instant dispute arises out of the parties' Settlement Agreement, and accordingly should be governed by New York law and adjudicated in a court in New York County, New York as required by the Settlement Agreement's forum-selection clause. Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."[2] 28 U.S.C. § 1404(a). Similarly, Section 1406(a) provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." Here, the parties entered into a clear and unambiguous forum-selection clause designating New York County, New York as the exclusive forum for disputes between them. Furthermore, the unnecessary inconvenience and expense, as well as prejudice to the Defendant's right to present

---

[1]   The Eleventh Circuit has established that consideration of whether to enforce a forum-selection clause in a diversity jurisdiction case is governed by federal law, not state law. See P&S Business Machines, Inc. v. Canon USA, Inc., 331 F.3d 804, 807 (11th Cir. 2003).

[2]   In addition to the forum-selection clause designating New York as the exclusive forum for disputes arising out of the Settlement Agreement, Plaintiffs could have originally brought their claims in the Southern District of New York as the district where the confessions of judgment were entered, and accordingly, where the claim arose under 28 U.S.C. § 1391(a). (See Compl. ¶¶ 37-39.)

live witnesses at trial, would be avoided with a transfer of this action to the Southern District of New York.  Therefore, in the interest of justice, this Court should enforce the parties' previously established choice of forum.

**A.      The Forum-Selection Clause Is Applicable To This Action**

Pursuant to the forum-selection clause contained in the Settlement Agreement, Plaintiffs are obligated to submit all disputes arising out of or related to the Settlement Agreement in a court in New York County, New York.  Section 19 of the Settlement Agreement provides:

> "This Agreement shall be governed by the laws of the State of New York applicable to agreements entered into within the State of New York excluding the choice of law rules thereof.  All disputes arising out of or related to this Agreement shall be submitted to the state and federal courts situated in the state of New York in the County of New York, and each Party irrevocably consents to personal jurisdiction and venue in such courts and waives all objections thereto."

(Settlement Agreement, at § 19.)

The entire basis for the Verified Complaint is to oppose enforcement of Defendant's rights and remedies against Plaintiffs under the Settlement Agreement, to seek a declaration of Plaintiffs' rights under the Settlement Agreement, and to pursue tort and contract claims arising out of the Settlement Agreement.  Plaintiffs oppose enforcement of the foreign judgments filed in New York County against them on the grounds that they "did not default under any provision of the Settlement Agreement and [Defendant's] notice of the alleged defaults was improper, defective and unconscionable."  (Compl. ¶ 53.)  Plaintiffs further seek declaratory relief regarding their "rights under the terms of the Settlement Agreement, Confessions of Judgment and the Foreign Judgments," (id. ¶ 60), because they "are unsure as to the extent the Settlement Agreement and Foreign Judgments are enforceable, if at all . . . ."  (id. ¶ 61).

Plaintiffs' claims in tort and contract also arise from either the terms of the Settlement Agreement or Defendant's subsequent actions to enforce those terms. Plaintiffs' defamation claims are based on some unspecified defamatory statements that Defendant published in "New York and Florida Public Records" by filing the foreign judgments. (See id. ¶ 66.) As the basis for Plaintiffs' breach of implied covenant of good faith and fair dealing in contract claim, Plaintiffs assert that "[t]he Parties, pursuant to their execution of the Settlement Agreement had an implied covenant of good faith and fair dealing with respect to the Settlement Agreement." (Id. ¶ 72.) The abuse of process claim is premised on allegations that the Notice of Default was purportedly "a blatant attempt by [Defendant] to merely obtain an uncontested $2 Million Confession of Judgment against [Plaintiffs] before the expiration of the Settlement Agreement's two (2) year Time Limit . . . ." (Id. ¶ 77.) Similarly, Plaintiffs' fraud claims are based on conclusory assertions that Defendant "has acted fraudulently throughout the entire course of dealing with [Plaintiffs], including but not limited to, the execution of the Settlement Agreement, Confessions of Judgment, and Notice of Default and in initiating the Original Proceedings and the Enforcement Proceedings." (Id. ¶ 80.)

**B.** **The Forum-Selection Clause Is Not Unreasonable And Should Be Enforced**

The action should be transferred pursuant to Section 1406(a) because pursuant to the parties' forum-selection clause, the Southern District of Florida is not a valid venue to adjudicate this dispute. Forum-selection clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances." M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972) (internal quotation omitted). A forum-selection clause is unreasonable in only four circumstances: (1) when the formation of the clause was induced by fraud or overreaching; (2) when the plaintiff would be deprived of her day in court because of inconvenience or unfairness; (3) when the chosen law would deprive the

plaintiff of a remedy; or (4) when enforcement of the provisions would contravene public policy. Green Island Holdings, LLC v. British Am. Isle of Venice (BVI), Ltd., No. 09-80207, 2009 U.S. Dist. LEXIS 51475, at * 3-4 (S.D. Fla. June 17, 2009) (citing Lipcon v. Underwriters at Lloyd's, London, 148 F.3d 1285, 1290 (11th Cir. 1998) and Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 595 (1991)); see also Segal v. Amazon.com, Inc., No. 10-20718, 2011 U.S. Dist. LEXIS 11429, at * 5 (S.D. Fla. Feb. 4, 2011) ("A forum-selection clause can only be invalidated on a showing of a 'bad faith motive' where the forum was chosen 'as a means of discouraging [parties] from pursuing legitimate claims.'") (quoting Carnival Cruise Lines, Inc., 499 U.S. at 595). "The party attempting to invalidate the forum selection clause carries a heavy burden as the Supreme Court has construed this 'unreasonable' exception narrowly and requires the party to make a clear showing of unreasonableness." Fred Lurie Assocs. v. Global Alliance Logistics, Inc., 453 F. Supp. 2d 1351, 1354 (S.D. Fla. 2006) (citing Carnival Cruise Lines, Inc., 499 U.S. at 594-95).

Plaintiffs have failed to allege that the Settlement Agreement's forum-selection clause is unreasonable. First, Plaintiffs fail to allege that the formation of the forum-selection clause was induced by fraud or overreaching. At most, Plaintiffs make conclusory allegations that:

- The "**Confessions of Judgment** were non-negotiable (i.e. New York laws, New York jurisdiction) and executed under duress," (Compl. ¶ 16 (emphasis added));

- That the "additional onerous terms of the Settlement Agreement [were] executed under clear economic duress," which specifically only included mention of the "Notice of Default" provision and the time-to-cure provision, (Compl. ¶ 17; and

- That Defendant generally "has acted fraudulently throughout the entire course of dealing with [Plaintiffs], including but not limited to, the execution of the Settlement Agreement, Confessions of Judgment, and Notice of Default and in initiating the Original Proceedings and the Enforcement Proceedings," (Compl. ¶ 80).

However, because nothing in the Verified Complaint alleges that the formation of the forum-selection clause itself was induced by fraud or overreaching, these broad fraud-based

allegations must be disregarded. See Lipcon, 148 F.3d at 1296 ("By requiring the plaintiff specifically to allege that the choice clause itself was included in the contract due to fraud in order to succeed in a claim that the choice clause is unenforceable, courts may ensure that more general claims of fraud will be litigated *in the chosen forum*, in accordance with the contractual expectations of the parties.") (emphasis in original).[3]

In addition, Plaintiffs would not be deprived of their day in court nor deprived of any judicial remedy if the case was merely transferred to New York and adjudicated under New York law; and Plaintiffs make no contrary allegations in the Verified Complaint. Moreover, the forum-selection clause does not violate public policy. In fact, enforcing the parties' chosen choice of forum supports the public policy of protecting freedom of contract and enforcement of contractual obligations. See In re Ricoh Corp., 870 F.2d 570, 573 (11th Cir. 1989) (recognizing strong public policy favoring enforcement of contractual obligations).

Plaintiffs have alleged no discernible fraud or bad-faith motive sufficient to invalidate the forum-selection clause. Defendant's principal place of business is in New York, the forum specified in the Settlement Agreement. (See Compl. ¶¶ 4, 16.) Plaintiffs do not allege any facts

---

[3]   Furthermore, Plaintiffs' general claims of duress and fraud are spurious. Plaintiffs assert that they defaulted on their loans on or about September 30, 2008. (Compl. ¶ 15.) However, instead of immediately issuing Plaintiffs a Notice of Default, Defendant filed a second forbearance agreement on December 26, 2008, pursuant to which it ultimately agreed to forebear from exercising its remedies against Plaintiffs as Guarantors until January 31, 2009. (Settlement Agreement, at 1-2.) It was not until the second forbearance agreement expired -- over two months after Borrowers defaulted on their loans -- that Defendant finally exercised its rights to declare the over $30 million outstanding due and payable. (Id.) However, even with the loan due and payable, Defendant offered Plaintiffs a Settlement Agreement, which as sophisticated business parties to a multi-million dollar loan, Plaintiffs agreed to instead of litigating over the entire amount owed, and under which Defendant received less than the total sum due and payable. (See Compl. ¶ 56.)

indicating that Defendant chose New York as a forum to prevent Plaintiffs from pursuing legitimate claims. Instead, Plaintiffs bargained for favorable settlement terms in which they avoided potentially costly litigation and the collection of debts in excess of $34 million. (Compl. ¶ 16.) Accordingly, because Plaintiffs' causes of action arise from the terms and enforcement of the Settlement Agreement, and because the Settlement Agreement's forum-selection clause is not unreasonable, the action should be transferred.

**C.      The Forum-Selection Clause Weighs Significantly In Favor Of Transfer**

       In the alternative, when determining whether to transfer a case pursuant to Section 1404(a), a court will balance several factors, including convenience, cost, judicial economy, and the expedition of discovery and trial processes. See Manuel v. Convergys Corp., 430 F.3d 1132, 1135 n.1 (11th Cir. 2005). However, under a Section 1404(a) transfer analysis, a valid forum-selection clause is "'a significant factor that figures centrally in the district court's calculus.'" P & S Business Machines, Inc. v. Canon USA, Inc., 331 F.3d 804, 807 (11th Cir. 2003) (quoting Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988)). "Thus, while other factors might 'conceivably' militate against a transfer . . . the clear import of the Court's opinion is that the venue mandated by a choice of forum clause rarely will be outweighed by other 1404(a) factors." In re Ricoh Corp., 870 F.2d at 573; id. at 573 n.6 ("[A] valid forum selection clause [should be] given controlling weight in all but the most exceptional cases" (quoting Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 33 (1988) (Kennedy, J., concurring))).

       As discussed above, there are no exceptional circumstances present in either the formation or implementation of the forum-selection clause that would serve to abrogate the significant weight normally afforded to it. The parties entered into the Settlement Agreement freely and knowingly, and agreed to litigate disputes in New York County, New York.

Accordingly, Defendant's motion to transfer should be granted based on the existence of a valid forum-selection clause alone.

In addition to the significance of the forum-selection clause to the Court's Section 1404(a) analysis, the Southern District of New York is also the most convenient forum to litigate Plaintiffs' causes of action, as assessed under the Section 1404(a) factors. Section 1404(a) was enacted to "prevent the waste 'of time, energy and money' and to 'protect litigants, witnesses and the public interest against unnecessary inconvenience and expense.'" <u>Van Dusen v. Barrick</u>, 376 U.S. 612, 616 (1964) (quoting <u>Continental Grain Co. v. Barge FBL-585</u>, 364 U.S. 19, 26 (1960)). Here, the Section 1404(a) factors favor transfer of the action to the Southern District of New York.

Defendant's principal place of business is located in the Southern District of New York. (<u>See</u> Compl. ¶¶ 4, 16.) If this case were to remain in the Southern District of Florida, Defendant and its party witnesses would suffer a considerable burden in litigating in a distant location, as it would be forced to incur considerable travel and accommodation expenses to attend hearings and trial, if any. Additionally, Plaintiffs' Verified Complaint asserts that the present cause of action arose in New York when Defendant filed Plaintiffs' confessions of judgment with the County Clerk's Office for the Supreme Court of the State of New York, and received a final judgment for $2 million against each Plaintiff. (<u>See</u> Compl. ¶¶ 37-38.) In fact, the crux of Plaintiffs' complaint is to challenge the New York judgments and to seek declaratory relief that the New York judgments are not enforceable against them. As such, any relevant documents or other evidence related to Plaintiffs' various claims against Defendant, including evidence related to Plaintiffs' contract and tort claims, are also located in Defendant's possession in New York. Finally, the Settlement Agreement's choice of law provision provides for the

application of New York law to any disputes arising out of the Settlement Agreement, a body of law the Southern District of New York court has extensive familiarity addressing.  (See Settlement Agreement, at § 19.)

       Given that (i) the Plaintiffs and Defendant agreed that a state or federal court in New York County was the proper forum for disputes arising out of the Settlement Agreement; (ii) Plaintiffs and Defendant agreed that New York law would govern the disputes; (iii) Defendant and its potential party witnesses reside in New York; (iv) substantially all of the relevant documents, records, and systems are located in New York; and (v) the action arose out of a New York court judgment, Defendant respectfully requests that the Court transfer this case to the United States District Court for the Southern District of New York to effectuate the parties' intent that their disputes be litigated in New York County, New York.

## CONCLUSION

       For all of the foregoing reasons, Defendant's amended motion to transfer the action to the United States District Court for the Southern District of New York should be granted.

## LOCAL RULE 7.1(A)(3) CERTIFICATION

       Counsel for Defendant has conferred with Plaintiffs in a good faith effort to resolve the issues but has been unable to do so.

Dated: April 15, 2011

Respectfully submitted,

By ____s/ Hal M. Lucas_____
     Gregory S. Grossman (Bar No.: 896667)
     ggrossman@astidavis.com
     Hal M. Lucas (Bar No. 0853011)
     hlucas@astidavis.com
     ASTIGARRAGA DAVIS MULLINS &
        GROSSMAN, P.A.
     701 Brickell Avenue, 16th Floor
     Miami, Florida 33131
     Telephone: (305) 372-8282
     Facsimile: (305) 372-8202
     Attorneys for Defendant Fortress Value
        Recovery Fund I LLC f/k/a D.B.
        Zwirn Special Opportunities Fund,
        L.P.

     Scott S. Balber*
     sbalber@chadbourne.com
     CHADBOURNE & PARKE LLP
     30 Rockefeller Plaza
     New York, NY 10112
     Telephone: (212) 408-5100
     Facsimile: (212) 541-5369
     Attorney for Defendant Fortress Value
        Recovery Fund I LLC f/k/a D.B.
        Zwirn Special Opportunities Fund,
        L.P.
     * not admitted in the Southern District
     of Florida: Pro Hac Vice to be filed

## CERTIFICATE OF SERVICE

**I hereby certify** that a true and correct copy of the foregoing was served in the

manner specified on April 15, 2011, on all counsel or parties of record on the Service List below.

s/ Hal M. Lucas
Hal M. Lucas

## SERVICE LIST

David B. Haber, Esq.
dhaber@dhaberlaw.com
Law Offices of David B. Haber, P.A.
201 S. Biscayne Blvd., Suite 1205
Miami, Florida 33131
Telephone: (305) 379-2400
Facsimile: (305) 379-1106
Counsel for Plaintiffs Rodovaldo Rody Gomez,
    Saby Gomez de Molina, and Rody Gomez
    a/k/a Rody Gomez Jr.
Via transmission of Notice of Electronic Filing generated by CM/ECF

David Thomas Podein
dpodein@dhaberlaw.com
Law Offices of David B. Haber, P.A.
201 S. Biscayne Blvd., Suite 1205
Miami, Florida 33131
Telephone: (305) 379-2400
Facsimile: (305) 379-1106
Counsel for Plaintiffs Rodovaldo Rody Gomez,
    Saby Gomez de Molina, and Rody Gomez
    a/k/a Rody Gomez Jr.
Via transmission of Notice of Electronic Filing generated by CM/ECF

Lindsey Fallon Thurswell
lthurswell@dhaberlaw.com
Law Offices of David B. Haber, P.A.
201 S. Biscayne Blvd., Suite 1205
Miami, Florida 33131
Telephone: (305) 379-2400
Facsimile: (305) 379-1106
Counsel for Plaintiffs Rodovaldo Rody Gomez,
    Saby Gomez de Molina, and Rody Gomez
    a/k/a Rody Gomez Jr.
Via U.S. Mail