UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:11-Civ-21155-Moore/Torres

RODOVALDO RODY GOMEZ, SABY GOMEZ
DE MOLINA, RODY GOMEZ A/K/A RODY
GOMEZ JR.,

                Plaintiffs,

v.

D.B. ZWIRN SPECIAL OPPORTUNITIES FUND
L.P.,

                Defendant.
_____/

## DEFENDANT'S MEMORANDUM OF LAW IN
## OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

Defendant Fortress Value Recovery Fund I LLC f/k/a D.B. Zwirn Special Opportunities Fund, L.P. ("Defendant"), by and through its undersigned counsel, respectfully submits this memorandum of law in opposition to the motion of plaintiffs Rodovaldo Rody Gomez, Saby Gomez de Molina, and Rody Gomez a/k/a Rody Gomez Jr. (collectively, "Plaintiffs" or "Guarantors") to remand this action to state court (the "Remand Motion").

## PRELIMINARY STATEMENT

Plaintiffs' Remand Motion should be denied. First, diversity jurisdiction exists because Plaintiffs and Defendant are citizens of different states -- Plaintiffs are citizens of Florida and Defendant is a citizen of Delaware and New York -- and the more than $2 million amount in controversy for each Plaintiff exceeds the $75,000 jurisdictional minimum. Second, federal question jurisdiction exists because Plaintiffs' Verified Complaint makes clear that certain of its causes of action are based on purported violations of 11 U.S.C. §§ 727 and 524, and violations of the Due Process clauses of the U.S. Constitution. Third, federal jurisdiction is

appropriate because this Action is related to bankruptcy proceedings pending in the United States Bankruptcy Court for the Southern District of Florida, where overlapping arguments against enforcement and for relief have been presented for resolution.

Furthermore, Defendant has not waived its right to remove this action. Any action that Defendant took in separate court proceeding to defend against Plaintiffs' incorrectly filed motions does not demonstrate Defendant's intent to litigate in state court. Similarly, Defendant's filing of a single motion immediately before it removed this Action, and filed for the sole purpose of preserving its rights, is further insufficient to establish waiver of its right to remove.

Because Defendant has not waived its right to remove and this Court has original jurisdiction over this Action, the Remand Motion should be denied.

## STATEMENT OF FACTS

**A.     The Foreign Judgments**

Defendant was a lender to several trucking companies and dealerships owned and operated by Rody Truck Enterprises, Inc. ("Borrowers") pursuant to a Financing Agreement dated June 29, 2007. (Compl. ¶ 14.) When Borrowers almost immediately defaulted, the parties entered into two forbearance agreements -- the first on November 16, 2007 and the second on December 26, 2008 -- pursuant to which Defendant ultimately agreed to forebear from exercising its remedies under the Financing Agreement against Borrowers until January 31, 2009. (See Balber Decl. Ex. A ("Settlement Agreement"), at 1-2.)[1] Upon Borrowers' continued triggering of certain events of default and upon the expiration of the second forbearance agreement,

---

[1] "Balber Decl." refers to the Declaration of Scott S. Balber dated May 2, 2011.

Defendant declared all outstanding obligations pursuant to the Financing Agreement immediately due and payable. (Id.) As of February 2009, Borrowers owed over $30 million to Defendant under the terms of the Financing Agreement. (See id. 2; Compl. ¶ 17.)

On February 17, 2009, Defendant entered into a Settlement Agreement with Borrowers. (See Compl. ¶ 16.) Plaintiffs executed the Settlement Agreement as Borrowers' guarantors. (See id.) Pursuant to the Settlement Agreement's forum-selection clause, any dispute "arising out of or related" to the Settlement Agreement would be subject to the exclusive jurisdiction of New York state or federal courts, and would be governed by New York law. (See Settlement Agreement, at § 19.) As a guarantor to the Settlement Agreement, each Plaintiff additionally signed a confession of judgment for $2 million ("Confessions of Judgment"). (See id.; Settlement Agreement, at Exs. 2-4 ("Aff. of Confession of Judgment").) The Confessions of Judgment could be enforced against Plaintiffs in the Supreme Court of the State of New York, County of New York, upon the triggering of certain events of default enumerated in the Settlement Agreement. (See id.; Settlement Agreement § 5.)

The Confessions of Judgment each state: "I hereby confess judgment for $2,000,000, which is justly due and owing to the Agent (on behalf of the Lenders), and hereby authorize [Defendant] . . . to enter judgment in the Supreme Court of the State of New York, County of New York, against me in the amount of $2,000,000." (Aff. of Confession of Judgment ¶ 6.) The Confessions of Judgment further state: "Pursuant to the Guaranty, I irrevocably and unconditionally agreed to submit to the general jurisdiction of the courts in the state of New York." (Aff. of Confession of Judgment ¶ 5.)

On February 1, 2011, Defendant sent Plaintiffs a Notice of Default, as prescribed by the Settlement Agreement, informing them that Borrowers and the Plaintiffs had violated several

-3-

provisions of the Settlement Agreement. (See Compl. ¶¶ 23-24; Settlement Agreement §§ 5(a)-(b), 15.) When Plaintiffs failed to cure the defaults, on February 3, 2011, Defendant filed the Confessions of Judgment with the County Clerk's Office for the Supreme Court of the State of New York, and received a final judgment for $2 million against each Plaintiff the following day (the "Foreign Judgments"). (See Compl. ¶¶ 37-38.)

On February 9, 2011, Defendant provided a certified copy of the Foreign Judgments to the Clerk of Circuit and County Courts for Miami-Dade County, Florida, for recording of the Foreign Judgments, pursuant to the Florida Enforcement of Foreign Judgments Act ("FEFJA"), Fla. Stat. § 55.503. (Balber Decl. ¶ 3.) On February 23, 2011, pursuant to, Fla. Stat. § 55.505, the Clerk recorded the Foreign Judgments under separate docket numbers for each Guarantor in the Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, Florida (the "Foreign Judgment Dockets"). (See Compl. ¶¶ 40-41; Balber Decl. Exs. B-D ("Notices of Recording").)

**B.    Guarantors File Overlapping Motions In Multiple Courts**

In lieu of immediately filing an action contesting the Foreign Judgments and recording a Lis Pendens pursuant to Fla. Stat. § 55.509, Plaintiffs instead elected to file multiple overlapping motions in federal and state court.

On March 9, 2011, under the docket of his Chapter 7 bankruptcy proceeding in the United States Bankruptcy Court for the Southern District of Florida ("Bankruptcy Proceedings"), Plaintiff Rody Gomez filed a motion to enforce an order discharging him as a debtor, as well as a

motion for sanctions against Defendant and its attorneys.[2]  (Balber Decl. Ex. E ("Bankruptcy Motion").)  The Bankruptcy Motion seeks entry of an order compelling dismissal with prejudice of all complaints and actions that Defendant brought against Debtor, and the withdrawal of any recorded documents and lien instruments.  Defendant filed an opposition motion based on the fact that Rody Gomez did not provide Defendant with any actual notice of his bankruptcy because notice was sent to a different entity and address.  (Balber Decl. Ex. F ("Bankruptcy Opposition").)  An evidentiary hearing is scheduled for June 2011.  (Balber Decl. ¶ 7; see Compl. ¶ 36; Remand Mot. 5.)

In further disregard of Fla. Stat. § 55.509, on March 23, 2011, Plaintiffs each served Defendant with a motion to set bond and a Motion to Quash the Enforcement of a Foreign Judgment in their corresponding Foreign Judgment Dockets.  (See Balber Decl. Exs. G-I ("Motions to Quash").)  Similar to the relief sought in the Bankruptcy Motion, Rody Gomez's Motion to Quash argues:

> "Enforcement of the Foreign Judgment against RODY should be quashed in this Instant Proceeding pursuant to F.S. §55.509, due to RODY's prior discharge in bankruptcy, the Original Court's lack of personal jurisdiction over RODY, lack of proper notice to RODY, as well as lack of valid grounds to support the entry of the Foreign Judgment in the Original Proceeding."

(Balber Decl. Ex. I 9.)  The remaining Plaintiffs assert similar claims and requests for relief. (See Balber Decl. Exs. G-H 9-10.)  In the interests of judicial economy and because the Plaintiffs' motions were interrelated, Defendant moved to transfer the three overlapping Foreign Judgment

---

[2]   On January 5, 2010, Rody Gomez filed a voluntary petition in the United States Bankruptcy Court for the Southern District of Florida under Chapter 7 of Title 11.  In re Gomez, 10-10099-LMI (Bankr. S.D. Fla. Jan. 5, 2010).  (Compl. ¶ 32.)  On May 19, 2010, the Clerk for the Bankruptcy Court entered an Order of Discharge for his Estate.  (Compl. ¶ 35.)

Docket proceedings to a single docket on April 6, 2011. (Balber Decl. ¶ 14.) The pending motions were consolidated before a single state court judge on April 12, 2011. (Id. ¶ 10.)

**C.     The Current Action**

After filing multiple motions in other forums, Plaintiffs filed a separate action against Defendant pursuant to Fla. Stat. § 55.509. On March 24, 2011, Plaintiffs filed a Verified Complaint in a separate docket in the Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, Florida (the "State Court Opposition Docket"). (See Docket Entry ("DE") #1 at Ex. B.) At the time Plaintiffs commenced this Action, Defendant was a limited liability company organized under the laws of the State of Delaware with its principal place of business in New York. (See Compl. ¶¶ 4, 16.) Plaintiffs were and are residents of Miami-Dade County, Florida. (See Compl. ¶¶ 1-3.)

The Verified Complaint asserts that the "bases of this Action" in opposition to the enforcement of the $2 million Foreign Judgments are the following: (i) the New York court's jurisdiction was invalid under Article 4, Section 1 of the U.S. Constitution; (ii) Plaintiffs did not receive proper notice or service; (iii) the Foreign Judgments were based on an improper Notice of Default; (vi) Plaintiffs did not default; and (v) the Foreign Judgment against Plaintiff Rody Gomez "is a clear violation of 11 U.S.C. §§[]727 and 524 and a violation of the Supremacy Clause of the U.S. Constitution, Article 6, Section 1." (See Compl. ¶ 43.) In addition, the Verified Complaint further asserts separate causes of action for defamation (Count III); breach of implied covenant of good faith and fair dealing in contract (Count IV); abuse of process (Count V); and fraud (Count VI). On April 1, 2011, Defendant filed a motion to dismiss for improper venue, pursuant to Fla. R. Civ. P. 1.140(b)(3) and 28 U.S.C. § 1406. (See DE #1 at Ex. G.)

The same day, immediately after filing the motion to dismiss, Defendant filed a Notice of Removal, pursuant to 28 U.S.C. §§ 1331, 1332, 1334, 1441, 1446, and 1452. (DE #1.)

On April 4, 2011, Defendant filed a notice with the state court that it had removed the Action, pursuant to 28 U.S.C. § 1446(d). (DE #4 at 1.) Having removed the Action to federal court, Defendant has taken no further actions in the State Court Opposition Docket. (Balber Decl. ¶ 14.) On April 15, 2011, Defendant amended its motion to dismiss the Verified Complaint for improper venue to a motion to transfer the action to the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. §§ 1404(a) and 1406(a), because the Settlement Agreement plainly provides for exclusive venue in New York. (DE # 9.)

## ARGUMENT

The Remand Motion is predicated on four deficient and unsupported arguments. Plaintiffs argue that (i) Defendant waived its right to remove this Action because it had participated in proceedings that Plaintiffs had initiated in the State Court Opposition Docket and separate Foreign Judgment Dockets proceedings; (ii) the Court does not have diversity jurisdiction because Plaintiffs' challenge to the validity of the $2 million Foreign Judgments somehow does not meet the $75,000 amount in controversy minimum; (iii) the Court lacks jurisdiction pursuant to 28 U.S.C. § 1452(a) because the Verified Complaint's bankruptcy-related claims are also currently pending before a United States Bankruptcy Court; and (vi) the Court does not have federal question jurisdiction over Plaintiffs' claims that the Foreign Judgments are invalid pursuant to 11 U.S.C. §§ 727 and 524 and the U.S. Constitution.

Each of these arguments are meritless and Plaintiffs' Action belongs in this Court. The federal removal statute, 28 U.S.C. § 1441(a), permits a defendant to remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." Federal courts have an obligation to exercise the jurisdiction conferred upon them and should approach remand cautiously to avoid erroneously depriving a defendant of the

opportunity to litigate in a federal forum.  See, e.g., New Orleans Pub. Serv., Inc. v. Council of New Orleans, 491 U.S. 350, 358-59 (1989).

**I.
DEFENDANT HAS NOT WAIVED ITS RIGHT TO REMOVE BECAUSE IT HAS NOT INDICATED ANY INTENTION TO LITIGATE IN STATE COURT**

Plaintiffs' assertion that Defendant waived its right to remove is unfounded and should be rejected.  A defendant will not waive its right to remove unless it takes some substantial offensive or defensive action in the state court action that indicates a willingness to litigate there, before it files a notice of removal.  See Yusefzadeh v. Nelson, Mullins, Riley & Scarborough, LLP, 365 F.3d 1244, 1246 (11th Cir. 2004); Cogdell v. Wyeth, 366 F.3d 1245, 1249 (11th Cir. 2004).  "[A] defendant whose sole action in the state court is the filing of the motion to dismiss has not indicated any intent to waive its right to proceed in the federal forum." Somoano v. Ryder Sys., 985 F. Supp. 1476, 1478 (S.D. Fla. 1998).  Indeed, "the Federal Rules of Civil Procedure contemplate the filing of a responsive pleading prior to the removal of a case." Yusefzadeh, 365 F.3d at 1246; see Hill v. State Farm Mut. Auto. Ins. Co., 72 F. Supp. 2d 1353, 1354 (M.D. Fla. 1999) (discussing two federal district court cases that upheld removal where the defendant filed a motion to dismiss in state court on the same day it filed a notice of removal and where the defendant did not schedule a hearing for its motion to dismiss).

Defendant had no intention to litigate this Action in state court.  Instead, Defendant filed the motion to dismiss for improper venue, based in part on 28 U.S.C. § 1406 -- the *federal* improper venue statute -- for the sole purpose of preserving the status quo and properly

preserving its right to bring a § 1406 claim before this Court.[3] (Balber Decl. ¶ 14.) Consequently, Defendant filed its Notice of Removal immediately after filing the motion, notified the state court of the removal, and did not set the motion for a hearing date. See Hill, 72 F. Supp. 2d at 1354; (DE #4 at 1). At no point prior or subsequent to filing the Notice of Removal did Defendant file any counterclaims, attend any hearings, seek any adjudication of the Verified Complaint on the merits, or request any other relief in state court for this Action. (Balber Decl. ¶ 14.) In fact, Plaintiffs acknowledge that Defendant had no intention to litigate this Action in state court, admitting that Defendant "fil[ed] a Motion to Dismiss in the Instant Lawsuit in State Court *when the intent to remove was apparent* . . . ." (Remand Mot. 10 (emphasis added).)[4]

---

[3] Defendant filed the motion pursuant to 28 U.S.C. § 1406 for the sole purpose of avoiding claims of waiver and preserving its rights to bring the same motion in federal court, in consideration of the court's statements in Thunder Marine, Inc. v. Brunswick Corp., No. 06-384, 2006 U.S. Dist. LEXIS 45949 (M.D. Fla. July 6, 2006). In Thunder Marine, Inc., the court distinguished a First Circuit decision that granted a removing defendant's motion pursuant to 28 U.S.C. § 1406, where "the Court stated that the defendant in that matter had 'properly preserved' its right to challenge venue by first pleading the venue issue in state court prior to removal and then pleading the issue again in federal court after removal." 2006 U.S. Dist. LEXIS 45949, at * 7-8 (citing Lambert v. Kysar, 983 F.2d 1110, 1112-13 (1st Cir. 1993). Having preserved this right by first pleading the venue issue in state court prior to removal, Defendant filed an amended motion pursuant to 28 U.S.C. §§ 1404(a) and 1406(a). (DE # 9.)

[4] Plaintiffs' unfounded theory that Defendant had waived its removal rights because it filed a motion to dismiss before it had been served with the Verified Complaint should be disregarded. (Remand Mot. 9.) Had Defendant accepted service before filing its motion and notice of removal instead of after, (see DE #8), Plaintiffs would then have presumably argued that this pre-removal acceptance of service *also* demonstrates Defendant's intention to litigate in state court and waiver of its removal rights.

Because merely filing a motion to dismiss before removal is insufficient to demonstrate Defendant's intent to litigate this Action in state court, Plaintiffs disingenuously attempt to conflate Defendant's actions in multiple, separate state court proceedings. However, Plaintiffs' argument that Defendant demonstrated a "clear and unequivocal" intent to litigate *this Action* in state court when it filed papers and attended hearings in *other* proceedings in state court should be rejected.[5] (Remand Mot. 9-10.) Plaintiffs offer no support for their theory that a defendant waives its removal right by litigating in separate state proceedings. Instead, Plaintiffs rely on the inapplicable holding in Paris v. Affleck, 431 F. Supp. 878, 880 (M.D. Fla. 1977), which states that a Defendant indicates his intention to litigate in state court and waives his right to remove when filing a non-compulsory counterclaim in the same action. See 431 F. Supp. at 880. However, contrary to Plaintiffs' contentions, Defendant has not filed any complaints, asserted any causes of action or counterclaims, or began any proceedings to enforce the Foreign Judgments against Plaintiffs in this Action or otherwise. (See Balber Decl. ¶¶ 3, 14.) "[FEFJA] does not require a suit to be filed by the judgment creditor. On the contrary, the judgment creditor must simply record the foreign judgment in the clerk's office." Haigh v. Planning Bd., 940 So. 2d 1230, at 1233 (Fla. 5th DCA 2006). Accordingly, any actions taken by Defendant under a separate state court docket number are irrelevant to the Court's waiver analysis, and Plaintiffs' waiver argument should be rejected.

---

[5] Plaintiffs assert that Defendant (i) filed "three (3) separate complaints (i.e. the State Court Enforcement Proceedings)" in the separate Foreign Judgment Dockets; (ii) filed "a Motion to Transfer the State Court Enforcement Proceedings to one Division" in the separate Foreign Judgment Dockets; and (iii) set "its Motion to Transfer for hearing" in the separate Foreign Judgment Dockets, and attended that hearing after removal.

## II.
## THE COURT HAS DIVERSITY JURISDICTION
## OVER THE $2 MILLION AMOUNT IN CONTROVERSY

Removal was proper, and the Remand Motion should be denied, because there is complete diversity of citizenship between Plaintiffs and Defendant and the amount in controversy exceeds $75,000.[6] See 28 U.S.C. § 1332 (diversity) and § 1441 (removal). Defendants seeking removal may cite to allegations in the complaint, its exhibits, or other evidence attached to the response to a motion to remand. Osorio v. Medtronic, Inc., No. 11-20596, 2011 U.S. Dist. LEXIS 29980, at *4 (S.D. Fla. Mar. 23, 2011). "When a plaintiff seeks injunctive or declaratory relief, the amount in controversy is the monetary value of the object of the litigation from the plaintiff's perspective." Cohen v. Office Depot, Inc., 204 F.3d 1069, 1077 (11th Cir. 2000) (citations omitted). The value of the requested injunctive relief or declaratory relief "is the monetary value of the benefit that would flow to the plaintiff if the injunction were granted." See id. When an action concerns a dispute over the validity or scope of the object of the litigation, courts in the Eleventh Circuit will examine the face value to determine the benefit that would flow to the plaintiff. See, e.g., Guardian Life Ins. Co. of Am. v. Muniz, 101 F.3d 93, 94 (11th Cir. 1996) ("the face value of the policies constituted the jurisdictional amount" in action seeking cancellation of insurance policies); Diversified Mortg. Inc. v. Merscorp, Inc., No. 09-2497, 2010 U.S. Dist. LEXIS 55020, at *6 (M.D. Fla. May 5, 2010) (in action for declaratory

---

[6] Plaintiffs' Remand Motion does not dispute the complete diversity of the parties, and accordingly, this memorandum only addresses Plaintiffs' assertion that the amount in controversy has not been met. Plaintiffs are citizens of Florida and Defendant is a citizen of Delaware and New York. (See Compl. ¶¶ 1-3, 4,16.)

and injunctive relief regarding the plaintiff's interest in mortgages, "[t]he amount in controversy is determined by the face value of the mortgages").

Despite Plaintiffs' spurious assertion that the Verified Complaint's "attempts to preclude enforcement of the Foreign Judgment via injunctive and declaratory relief" involves "***no amount in controversy***," (Remand Mot. 16 (emphasis added)), and that "the jurisdictional amount is neither stated clearly on the face of the documents before the court, nor readily deducible from them," (see Remand Mot. 18), the monetary value of the benefit that would flow to each Plaintiff if the injunction is granted is $2 million, and accordingly, the amount in controversy requirement is satisfied. Like Plaintiffs' argument that Defendant had waived its removal rights, Plaintiffs' argument here is based on their misinterpretation of the nature of the Foreign Judgments already entered against them and the FEFJA process. (See Remand Mot. 17.)

Plaintiffs are faced with three adverse Foreign Judgments against them, each with a face value of $2 million and each of which have already been recorded by the Florida state court under three separate docket numbers. (See Compl. ¶¶ 40-41; Balber Decl. Exs. B-D.) There is nothing speculative about the enforceability or value of the Foreign Judgments. However, instead of satisfying the Foreign Judgments, Plaintiffs have elected to challenge their validity by seeking declaratory and injunctive relief. (See Compl. ¶¶ 44-63). On the face of the Verified Complaint, Plaintiffs seek:

- "[A]n Order from this Court pursuant to F.S. ¶55.509 as follows: . . . The Ex-Parte Confessions of Judgment and the Foreign Judgments are invalid and unenforceable and therefore the Guarantors are not liable to [Defendant] each in the amount of $2 Million . . . ," (Compl. 15); and

- "[A] Declaration from this Court as follows: . . . . The Ex-Parte Confessions of Judgment and the Foreign Judgments are invalid and unenforceable and therefore the Guarantors are not liable to [Defendant] each in the amount of $2 Million . . . ," (Compl. 17).

Plaintiffs alone, not Defendant, seek to benefit from Plaintiffs' challenges to the validity of the judgments at issue in this Action.  If they are successful in their Action, they will not be liable to Defendant for the $6 million face value of the Foreign Judgments that they currently owe.  Pretending that the amount in controversy is somehow less than $75,000 because the Verified Complaint only alleges that the amount in controversy is "in excess of $15,000," (Compl. ¶ 6, Remand Mot. 17), should not prevent the Court from appropriately exercising diversity jurisdiction over this Action where Plaintiffs repeatedly request the Court to confer to each of them a $2 million benefit.  See, e.g., Robertson-Ceco Corp. v. Cornelius, No. 03-475, 2007 U.S. Dist. LEXIS 23762, at *11 (N.D. Fla. Mar. 30, 2007) (exercising diversity jurisdiction in case brought pursuant to Fla. Stat. § 55.509 concerning $286,322.72 foreign judgment).  Because removal was proper pursuant to 28 U.S.C. §§ 1332 and 1441, Plaintiffs' Remand Motion should be denied.

### III.
### THE COURT HAS JURISDICTION BECAUSE THE CLAIMS ARE RELATED TO RODY GOMEZ'S FEDERAL BANKRUPTCY CASE

The Court should further deny Plaintiffs' Remand Motion because the Action is related to Plaintiff Rody Gomez's Bankruptcy Proceedings and pending Bankruptcy Motion. See In re Gomez, 10-10099-LMI (Bankr. S.D. Fla. Jan. 5, 2010); (Compl. ¶¶ 32, 36).  "A party may remove any claim or cause of action in a civil action . . . to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title."  28 U.S.C. § 1452(a).  Under 28 U.S.C. § 1334(b), this Court has jurisdiction to hear all civil proceedings that are "related to" cases under title 11 of the United States Code, as amended.

An action is "related to" a bankruptcy case if the litigation may have a "conceivable effect" on the bankruptcy estate.  See Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.), 910

-13-

F.2d 784, 788 (11th Cir. 1990) ("The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy . . . . An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." (citations omitted)); Cont'l Nat'l Bank of Miami v. Sanchez (In re Toledo), 170 F.3d 1340, 1345 (11th Cir. 1999) ("The key word in the Lemco Gypsum/Pacor test is 'conceivable,' which makes the jurisdictional grant extremely broad.").

This Action is related to Rody Gomez's Bankruptcy Proceedings because the Complaint asserts similar and overlapping facts, allegations, and requests for relief as those currently at issue in the Bankruptcy Proceeding. The Bankruptcy Motion argues that Rody Gomez's obligations had been discharged pursuant to a discharge order, (Bankruptcy Mot. 3), and seeks the following relief:

> "[A]n order, compelling the immediate withdrawal and dismissal with prejudice of all complaints and actions filed by Creditor against Debtor, withdrawal of any recorded documents and lien instruments, or those which would act as a lien post-discharge, [and] an award of sanctions, fees and costs against Creditor and its counsel . . . ,"

(Id. 4). Similarly, Plaintiffs now assert in this Action that:

- "The Foreign Judgment . . . is improper and unenforceable because the alleged obligation/debt to [Defendant] subject to the Foreign Judgment was properly discharged in [Rody Gomez's] Chapter 7 Bankruptcy Proceeding prior to the Foreign Judgment," (Compl. ¶ 47);

- "The filing of the Confession of Judgment and the filing of the Enforcement Proceeding is a clear violation of U.S.C. §§ 727 and 524 and thus a violation of the Supremacy Clause of the U.S. Constitution Article VI, Section 2," (Compl. ¶ 48);

- Defendant acted fraudulently whereby "[Defendant] proceeded to obtain an Ex-Parte Confessions of Judgment against [Rody Gomez] despite the fact that [he] received an Order of Discharge from the Bankruptcy Court under 11 U.S.C.[]§[]727," (Compl. ¶ 81; id. ¶ 80);

- "In addition, I [Rody Gomez] believe that the New York Judgments entered against myself, Rodovaldo and Saby are invalid and void in that: a. I filed for bankruptcy and received a Bankruptcy Discharge," (Affidavit of Rody Gomez ("Rody Gomez Aff.") ¶ 36, attached to Compl. at Composite Ex. 1); and

- "[Defendant was] discharged as creditors in my Bankruptcy Discharge and have no right to enforce the Final Judgment entered against me due to my Bankruptcy Discharge," (Rody Gomez Aff. ¶ 38).

In addition, Plaintiffs' requested relief in this Action -- an Order that Defendant's "debt collection attempts/demand and filings of the [Foreign Judgments] and the [recording of the Foreign Judgments] against [Rody Gomez] is a violation of the Bankruptcy Court's Order of Discharge, 11 U.S.C. §§ 727 and 524," (Compl. 15-16) -- further overlaps the relief sought in the Bankruptcy Proceedings.

Accordingly, it is "conceivable" that the Court's ruling on the above issues in this Action will impact the debtor's rights relating to the exact same issues in his Bankruptcy Proceedings. Moreover, Plaintiffs admit that this Action is related to the Bankruptcy Proceedings, asserting that "[t]here is simply no need for this Court to exercise jurisdiction over any issues ***relating to*** [Rody Gomez's] bankruptcy as all issues will be properly adjudicated in the Bankruptcy Case itself." (Remand Mot. 13-14 (emphasis added).) Plaintiffs' attempt to dictate to the Court which of their claims and requests for relief the Court has a "need" to address, however, does not render the issues any less related to the Bankruptcy Proceedings.[7]

---

[7] Although the Court may remand on "any equitable ground" pursuant to 28 U.S.C. § 1452(b), Plaintiffs have proffered no such reason, having reiterated nothing more than the legal standard for establishing a "sufficient equitable ground" for remand. (See Remand Mot. 14.)

## IV.
## THE COURT HAS FEDERAL QUESTION JURISDICTION BECAUSE PLAINTIFFS ASSERT CAUSES OF ACTION BASED ON FEDERAL LAW

Removal was proper, and the Remand Motion should be denied, because on the face of the Verified Complaint several of Plaintiffs' claims arise under the Constitution, laws, or treaties of the United States.  See 28 U.S.C. § 1331 (federal question) and § 1441 (removal).  Federal courts will have jurisdiction over a matter if "a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law."  Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 27-28 (1983).

Plaintiffs' claim that the "Complaint does not plead any claim arising under federal law," (Remand Mot. 11), is incongruous with even a cursory reading of the plain language of the pleadings.  Plaintiffs make the following claims in support of their requests for relief:

- "The filing of the Confession of Judgment and the filing of the Enforcement Proceeding is a clear violation of [11] U.S.C. §§ 727 and 524 and thus a violation of the Supremacy Clause of the U.S. Constitution Article VI, Section 2,"  (Compl. ¶ 48);

- "[Defendant's] action to enforce the Foreign Judgments against the Guarantors constitutes a violation of the procedural due process clause under the Fourth and Fourteenth Amendment of the U.S. Constitution,"  (Compl. ¶ 51);

- "Guarantors never 'purposefully availed' themselves of the benefits and protection of New York's laws and thus there are no minimum contacts with the original forum state necessary to establish personal jurisdiction over the Guarantors.  Without sufficient minimum contacts with the original forum state, the Settlement Agreement's provision consenting to jurisdiction in New York and entry of an Ex-Parte Confession of Judgment in New York is not sufficient to satisfy the due process requirements for personal jurisdiction under Article 4, Section 1 of the U.S. Constitution," (id. ¶ 52); and

- "In addition, I believe that the New York Judgments entered against myself, Rodovaldo and Saby are invalid and void in that . . . . I have no 'minimum contacts' with the State of New York and thus my due process rights have been violated under the U.S[.] Constitution," (Rody Aff. ¶ 36).

The Verified Complaint further states:

> "The *bases* of this Action and the Motion to Quash filed in the Enforcement Proceeding are that: a) The New York Court in the Original Proceedings did not have personal jurisdiction over the Guarantors because the Guarantors had no 'minimum contacts' with New York (the forum state). This is a violation of Article 4, Section 1 of the U.S. Constitution; [and] . . . e) The Foreign Judgment against [Rody Gomez] is a clear violation of 11 U.S.C. §§[]727 and 524 and a violation of the Supremacy Clause of the U.S. Constitution, Article 6, Section 1."

(See Compl. ¶ 43 (emphasis added).) Plaintiffs' requests for relief are similarly premised on the Court's resolution of the above federal issues. (See Compl. 15-16.)

The fact that Plaintiffs have not pled these claims as separate "counts" is irrelevant. (See Remand Mot. 11.) Whether these claims are listed as separate "counts" or grouped together under a single "Action in Opposition to Enforcement of Foreign Judgments" in Count I, the Court's interpretation of the U.S. Constitution and federal statutes is required to adjudicate this Action on the merits. Furthermore, the cases that Plaintiffs rely on to argue that the above-cited federal issues "do not show or tend to show the existence of a federal question" are inapposite, as they each stand for the proposition that *meritless* federal or constitutional claims do not warrant federal question jurisdiction.[8] (See Remand Mot. 12-13.) However, Plaintiffs cannot take the position that their claims are meritless without running afoul of Rule 11 of the Federal Rules of Civil Procedure.

---

[8] Plaintiffs cite to Dixon v. Martin, 260 F.2d 809, 811 (5th Cir. 1958) ("A federal question plainly devoid of merit will not sustain jurisdiction."); Givens v. Moll, 177 F.2d 765, 767 (5th Cir. 1949) ("That there is no merit whatever in either of these contentions, the most casual examination . . . will at once make clear."); and Ray v. Marion County, 71 F.2d 509, 510 (5th Cir. 1934) ("A federal question plainly void of merit will not sustain jurisdiction."). See also Drawdy Inv. Co. v. Leonard, 261 F.2d 226, 229 (5th Cir. 1958) ("The complaint before us fails entirely to charge any facts bringing action within federal competence.")

# V.
## ACTIONS BROUGHT PURSUANT TO FLA. STAT § 55.509 MAY BE ADJUDICATED IN FEDERAL DISTRICT COURT

Plaintiffs' claim that this Court cannot hear claims brought pursuant to Fla. Stat. § 55.509 because it is a state statute is meritless and should be rejected. (See Remand Mot. 11, 15.) A state statute cannot place limitations upon a federal court's jurisdiction if the requirements for federal jurisdiction have been met. See Kern v. Huidekoper, 103 U.S. 485, 492 (1880) ("[N]o provision of the State law, no peculiarity in the nature of the litigation which would forbid the United States court from entertaining original jurisdiction, could prevent the removal . . . ."). The fact that Fla. Stat. § 55.509 provides specific procedural rules for filing an action in state court brought pursuant to FEFJA, cannot not limit the Court's jurisdiction. See, e.g., Mutual First, Inc. v. O'Charleys of Gulfport, Inc., 721 F. Supp. 281, 282 (S.D. Ala. 1989) (citing id.).

Plaintiffs assert that removal should not be permitted for claims brought pursuant to Fla. Stat. § 55.509 because those claims should be considered as counterclaims, and Defendant should be considered as a plaintiff who would not normally be allowed to remove an action. (See Remand Mot. 10.) Plaintiffs further argue that having their claims removed and adjudicated in federal court would somehow "penalize" them and be an "injustice." (See Remand Mot. 15.) These contentions are unsupported. Actions brought pursuant to the procedure set forth in Fla. Stat. § 55.509 are not exempt from the federal removal statute. See, e.g., Robertson-Ceco Corp., 2007 U.S. Dist. LEXIS 23762, *7-8 (adjudicating dispositive motions in case brought pursuant to Fla. Stat. § 55.509 and removed on diversity jurisdiction grounds). In fact, the Florida District Court of Appeal has noted the confusion caused in the courts when a judgment debtor filed an "action" on the same docket that the foreign judgment was recorded, and the creditor was mislabeled as a "plaintiff" despite defending himself in the proceeding. See Boats Express, Inc.

v. Thackeray, 978 So. 2d 206 (Fla. 2d DCA 2008). Therefore, this Court has jurisdiction over this removed Action.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs' Remand Motion should be denied.

Dated: May 2, 2011

Respectfully submitted,

By     /s/ Hal M. Lucas
    Gregory S. Grossman (Bar No.: 896667)
    ggrossman@astidavis.com
    Hal M. Lucas (Bar No.: 0853011)
    hlucas@astidavis.com
    ASTIGARRAGA DAVIS MULLINS &
      GROSSMAN, P.A.
    701 Brickell Avenue, 16th Floor
    Miami, Florida 33131
    Telephone: (305) 372-8282
    Facsimile: (305) 372-8202
    Attorney for Defendant Fortress Value
      Recovery Fund I LLC f/k/a D.B.
      Zwirn Special Opportunities Fund,
      L.P.

    Scott S. Balber*
    sbalber@chadbourne.com
    CHADBOURNE & PARKE LLP
    30 Rockefeller Plaza
    New York, NY 10112
    Telephone: (212) 408-5100
    Facsimile: (212) 541-5369
    Attorney for Defendant Fortress Value
      Recovery Fund I LLC f/k/a D.B.
      Zwirn Special Opportunities Fund,
      L.P.
   * Admission pro hac vice pending

## CERTIFICATE OF SERVICE

**I hereby certify** on May 2, 2011, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system. I further certify that the foregoing document is being served this day on the following counsel in the manner specified.

/s/ Hal M. Lucas<br>
Hal M. Lucas

## SERVICE LIST

David B. Haber, Esq.
dhaber@dhaberlaw.com
Law Offices of David B. Haber, P.A.
201 S. Biscayne Blvd., Suite 1205
Miami, Florida 33131
Telephone: (305) 379-2400
Facsimile: (305) 379-1106
Counsel for Plaintiffs Rodovaldo Rody
    Gomez, Saby Gomez de Molina, and
    Rody Gomez a/k/a Rody Gomez Jr.
Served Via Notice of Electronic Filing
    generated by CM/ECF

David Thomas Podein
dpodein@dhaberlaw.com
Law Offices of David B. Haber, P.A.
201 S. Biscayne Blvd., Suite 1205
Miami, Florida 33131
Telephone: (305) 379-2400
Facsimile: (305) 379-1106
Counsel for Plaintiffs Rodovaldo Rody
    Gomez, Saby Gomez de Molina, and
    Rody Gomez a/k/a Rody Gomez Jr.
Served Via Notice of Electronic Filing
    generated by CM/ECF

Lindsey Fallon Thurswell
lthurswell@dhaberlaw.com
Law Offices of David B. Haber, P.A.
201 S. Biscayne Blvd., Suite 1205
Miami, Florida 33131
Telephone: (305) 379-2400
Facsimile: (305) 379-1106
Counsel for Plaintiffs Rodovaldo Rody
    Gomez, Saby Gomez de Molina, and
    Rody Gomez a/k/a Rody Gomez Jr.
Served Via U.S. Mail