**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:11-Civ-21155-Moore/Torres

RODOVALDO RODY GOMEZ, SABY GOMEZ
DE MOLINA, RODY GOMEZ A/K/A RODY
GOMEZ JR.,

                Plaintiffs,

        v.

D.B. ZWIRN SPECIAL OPPORTUNITIES FUND
L.P.,

                Defendant.

_____/

**MOTION TO DISMISS THE VERIFIED COMPLAINT**
**AND INCORPORATED MEMORANDUM OF LAW**

Defendant Fortress Value Recovery Fund I LLC f/k/a D.B. Zwirn Special

Opportunities Fund, L.P. ("Defendant") respectfully submits this motion, pursuant to Fed. R.

Civ. P. 12(b)(6) and 9(b), to dismiss the Verified Complaint filed by plaintiffs Rodovaldo Rody

Gomez ("Rodovaldo"), Saby Gomez de Molina ("Saby"), and Rody Gomez a/k/a Rody Gomez

Jr. ("Rody," and collectively, "Plaintiffs" or "Guarantors"), with prejudice, for failure to state a

claim upon which relief can be granted, and incorporated memorandum of law, stating:

**PRELIMINARY STATEMENT**

In this action, Plaintiffs challenge three New York judgments entered against them as

the result of their defaults under a February 2009 settlement agreement between the parties.  The

linchpin of Plaintiffs' claim is that they were forced to sign that settlement agreement -- in which

they consented to personal jurisdiction in New York, agreed to New York as the exclusive venue

to adjudicate disputes between the parties, and waived all claims against Defendant -- under

"duress." However, Plaintiffs' claimed duress is not the kind recognized under New York or Florida law as a defense to contractual obligations. Rather, the duress which Plaintiffs rely upon is nothing more than the prospect of being sued for non-payment of $30 million in loan obligations. This is not sufficient, as a matter of law, to undermine the judgments entered against Plaintiffs.

Once Plaintiffs' legally-flawed duress allegations are stripped away, their claims here fail and mandate that the Complaint be dismissed in its entirety. As plainly set forth in the settlement agreement, Plaintiffs contracted away their right to assert claims against Defendant and to litigate disputes between the parties anywhere other than New York. This Court should hold Plaintiffs to that bargain. Moreover, on the face of the Complaint, Defendant steadfastly complied with both the procedural and substantive requirements of the settlement agreement in obtaining its New York judgments against Plaintiffs. The Complaint offers no reason why those judgments should not be afforded full faith and credit in Florida. Furthermore, Plaintiffs' causes of action for defamation, breach of the covenant of good faith and fair dealing, abuse of process, and fraud should be dismissed for failure to state a claim upon which relief can be granted.

## STATEMENT OF FACTS

### A.    Plaintiffs Agreed To Settle Their Debt Obligations To Defendant

Defendant was a lender to several trucking companies and dealerships owned and operated by Rody Truck Enterprises, Inc. ("Borrowers") pursuant to a Financing Agreement, dated June 29, 2007. (Compl. ¶ 14; see Balber Decl. Ex. A ("Financing Agreement").)[1] Under

---

[1]    The Complaint was originally filed in the Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, Florida, and removed to this Court on April 1, 2011. (See DE #1, at

(Cont'd on following page)

the Financing Agreement, Plaintiffs served as principal guarantors of the Borrowers' obligations. (See Compl. ¶ 14; Financing Agreement 26.)  When Borrowers almost immediately defaulted, the parties entered into two forbearance agreements ("Forbearance Agreements") -- the first on November 16, 2007 and the second on December 26, 2008 -- pursuant to which Defendant ultimately agreed to forebear from exercising its legal rights and remedies under the Financing Agreement against Borrowers until January 31, 2009.  (See Balber Decl. Ex. B ("Settlement Agreement") 1-2.)  Upon Borrowers' continued default and the expiration of the second Forbearance Agreement, Defendant declared all outstanding obligations pursuant to the Financing Agreement immediately due and payable.  (Id. at 2.)  As of February 2009, Borrowers owed over $30 million to Defendant under the Financing Agreement.  (Id.; Compl. ¶ 17.)

Facing collection efforts or a potential lawsuit over their outstanding loan obligations, on February 17, 2009, Borrowers and Plaintiffs entered into a Settlement Agreement with Defendant to "resolve and settle the Debt owed to [Defendant] under the Loan Documents." (See Compl. ¶ 16, 17.)  Under the terms of the Settlement Agreement, Borrowers and Plaintiffs agreed to surrender to Defendant certain collateral (the "Specific Collateral") in partial satisfaction of their outstanding debts, and further consented to a strict foreclosure process. (Settlement Agreement § 2.)

_____

(Cont'd from preceding page)

Ex. B.)  "Balber Decl." refers to the Declaration of Scott S. Balber, dated May 24, 2011. Materials submitted in support of a motion to dismiss, but not attached to a complaint, may be considered in that motion where they are central to the plaintiff's claims and their authenticity is undisputed.  See Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005).  A district court may also consider public records, including documents filed on the dockets of other federal courts, when reviewing a motion to dismiss.  See Universal Express, Inc. v. SEC, 177 F. App'x 52, 53 (11th Cir. 2006).

As Guarantors under the Settlement Agreement, each Plaintiff additionally signed a confession of judgment for $2 million.  (Settlement Agreement Exs. 2-4 ("Confessions of Judgment").)  The Confessions of Judgment could be enforced against Plaintiffs in the Supreme Court of the State of New York, County of New York, upon the triggering of certain events of default, as determined by Defendant in its "sole and absolute discretion."  (See Compl. ¶ 17; see also Settlement Agreement §§ 5, 6.)  The Events of Default include, inter alia:

- Breaching the Settlement Agreement, "including but not limited [to] obligations and restrictions set forth in section 4 . . . and such breach, if capable of being cured, is not cured (as determined by [Defendant] in its sole discretion) after 1 business day written notice to Borrower in accordance with [the] notice provision below," (Settlement Agreement § 5(b)); and

- "[Becoming] a debtor in a case under 11 U.S.C. §§ 101, et seq. by the filing [of] a voluntary petition."  (Id. § 5(c).)

If Borrowers or Plaintiffs failed to cure the breach as determined by Defendant in its sole discretion, Defendant had the right to file all three Confessions of Judgment.  (Id. §§ 3, 5(a)-(b), 6(a).)  The Settlement Agreement did not require Defendant to provide notice or an opportunity to cure if a Guarantor filed a voluntary petition under the Federal Bankruptcy Code. (Id. § 5(c).)  Plaintiffs further agreed to submit to personal jurisdiction in New York and to a general release of any causes of action against Defendant.  (Id. §§ 11, 19.)

## B.  **Borrowers And Plaintiffs Breached The Settlement Agreement**

On January 5, 2010, Rody triggered an event of default under the Settlement Agreement where no notice or an opportunity to cure was required, when he filed for bankruptcy under Chapter 7 of Title 11 of the United States Code ("Bankruptcy Proceedings").  (See Compl. ¶ 32; Settlement Agreement § 5(c).)  Despite becoming a debtor under 11 U.S.C. §§ 101, et seq., Rody failed to list Defendant in the schedule of creditors attached to his voluntary petition, or otherwise notify Defendant of this default of the Settlement Agreement, until February 25, 2011.

(See Compl. ¶ 33; Balber Decl. Ex. C ("Voluntary Petition") at 17; Balber Decl. Ex. D ("February 25 Letter") at 1-2.)

Unaware of Plaintiffs' default under Section 5(c) of the Settlement Agreement from over one year earlier, on February 1, 2011, Defendant sent Plaintiffs a Notice of Default, in the manner prescribed by the Settlement Agreement, informing them that Defendant had determined that Borrowers and/or Plaintiffs had breached Section 4 of Settlement Agreement.  (See Balber Decl. Ex. E ("Notice of Default"); Compl. ¶¶ 23-24.)  When Plaintiffs denied "any underlying default" and failed to cure by February 3, 2011, (Compl. ¶ 29), Defendant filed the Confessions of Judgment with the County Clerk's Office for the Supreme Court of the State of New York, and received a final judgment for $2 million against each Plaintiff the following day (the "Foreign Judgments").  (Compl. ¶¶ 37-38.)

**C.**    **Defendant Recorded The Foreign Judgments In Florida**

On February 9, 2011, Defendant filed the Foreign Judgments pursuant to the Florida Enforcement of Foreign Judgments Act ("FEFJA"), Fla. Stat. § 55.503.  (See Compl. ¶ 40; Balber Decl. Exs. F-H ("Notices of Recording").)  On February 23, 2011, pursuant to Fla. Stat. § 55.505, the Clerk recorded the Foreign Judgments under separate docket numbers for each Guarantor in the Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, Florida.  (See Compl. ¶¶ 40-41; Notices of Recording.)

**D.**    **Plaintiffs Seek To Invalidate The Foreign Judgments**

On March 9, 2011, Rody individually filed a motion in his separate Bankruptcy Proceedings seeking, inter alia, (i) to enforce the Bankruptcy Court's order discharging him as a debtor, (ii) the withdrawal of the recorded Foreign Judgment against him, and (iii) sanctions against Defendant and its attorneys.  (See Compl. ¶¶ 32, 35, 36.)  Defendant filed an opposition based on the fact that it did not have actual notice of the bankruptcy or discharge -- instead of

sending notice to Defendant, Rody sent notice to a different entity, which was neither a party to the Settlement Agreement nor the Financing Agreement.  (<u>See</u> Balber Decl. Ex. I ("Bankruptcy Opposition Brief"); <u>see</u> <u>also</u> Voluntary Petition at 17.)  An evidentiary hearing on the motion has been set for June 27, 2011.  (<u>See</u> Balber Decl. Ex. J ("Hearing Order").)

On March 24, 2011, Plaintiffs filed a Complaint seeking declaratory relief and an order invalidating the Foreign Judgments (Counts I and II).  The Complaint asserts that Plaintiffs agreed to the terms of the Settlement Agreement and Confessions of Judgment under duress, and therefore, Plaintiffs should not be bound by their terms.  (<u>See</u> Compl. ¶¶ 16-18, 53, 61.) Accordingly, they claim that the Foreign Judgments are invalid because (i) the New York court lacked jurisdiction to enter the Confessions of Judgment; (ii) the Notice of Default was improper; (iii) Plaintiffs dispute that they had defaulted; and (vi) Rody's debt was discharged in the Bankruptcy Proceedings.  (<u>See</u> <u>id.</u> ¶ 43.)  In addition, the Complaint further asserts separate causes of action for defamation (Count III); breach of implied covenant of good faith and fair dealing in contract (Count IV); abuse of process (Count V); and fraud (Count VI) -- despite a Release Clause barring claims against Defendant, and the Forum Selection Clause's requirement that disputes be adjudicated in New York.  The Complaint is meritless and should be dismissed.[2]

## <u>ARGUMENT</u>

The Complaint should be dismissed because it does not plead "enough facts to state a claim to relief that is plausible on its face."  <u>Bell Atlantic Corp.</u> v. <u>Twombly</u>, 550 U.S. 544, 570

---

[2]   On March 24, 2011, Plaintiffs additionally filed overlapping motions contesting the validity of the Foreign Judgments, which are currently pending under three separate dockets in Florida State Court.  (<u>See</u> Compl. ¶¶ 42-43.)

(2007).  "[A] formulaic recitation of the elements of a cause of action" is insufficient to state a

claim.  <u>Ashcroft</u> v. <u>Iqbal</u>, 129 S. Ct. 1937, 1949 (2009) (quotations and citations omitted).

**I**
**PLAINTIFFS FAIL TO ALLEGE DURESS AS**
**A MATTER OF LAW AND ARE BOUND TO THE**
**<u>AGREED-UPON TERMS OF THE SETTLEMENT AGREEMENT</u>**

Plaintiffs' conclusory assertions that they signed the Settlement Agreement and the

Confessions of Judgment under economic duress, and therefore should not bound by their terms,

are unsupported by the Complaint or the relevant law.  (<u>See</u> Compl.  ¶¶ 16-18.)  Because

Plaintiffs have failed to allege duress, the terms of the Settlement Agreement are binding upon

Plaintiffs, the Confessions of Judgment are valid, and the Complaint should be dismissed.

**A.      Plaintiffs Fail To Allege That They Signed The Settlement Agreement Or**
**        <u>Confessions of Judgment Under Duress As A Matter Of Law</u>**

Plaintiffs have failed to plead facts sufficient to demonstrate that they signed the

Settlement Agreement or Confessions of Judgment under duress.  A claim for duress requires a

showing of "(1) threats of an unlawful act by one party which (2) compels performance by the

other party of an act which it had a legal right to abstain from performing."  <u>Chase Manhattan</u>

<u>Bank</u> v. <u>New York</u>, 13 A.D.3d 873, 874 (N.Y. App. Div. 2004).  Plaintiffs have failed to plead

that Defendant took any "unlawful act" that caused them to sign the Settlement Agreement or

Confessions of Judgment.  Indeed, the only act that Plaintiffs allege subjected them to "economic

duress" was a threat of "collection efforts and/or potential lawsuit for in excess of $34 Million."

(Compl. ¶ 17.)  However, the threat of a lawsuit or a creditor's exercise of contractual rights does

not constitute duress as a matter of law.  <u>Intelligent Digital Sys., LLC</u> v. <u>Visual Mgmt. Sys., Inc.</u>,

736 F. Supp. 2d 596, 601 (E.D.N.Y. 2010) ("Where the threat forming the basis of a coercion

defense is a threat [] to take legal action to enforce a right, there the defense fails.");  <u>Gubitz</u> v.

<u>Sec. Mut. Life Ins. Co. of N.Y.</u>, 262 A.D.2d 451, 451 (N.Y. App. Div. 1999) (threat of lawsuit to

-7-

recover amounts due does not constitute duress); <u>MLI Indus., Inc.</u> v. <u>N.Y. State Urban Dev.</u> <u>Corp.</u>, 205 A.D.2d 998, 1000-01 (N.Y. App. Div. 1994) (refusal to grant further forbearance where no legal duty to do so exists does not constitute duress).[3]

Instead, the Complaint and incorporated documents establish that Plaintiffs were sophisticated parties who negotiated a multi-million dollar loan, (<u>see</u> Financing Agreement; Compl. ¶ 17); two separate Forbearance Agreements that delayed Defendant's right to exercise its legal remedies regarding the defaulted loan obligations for more than ***two years***, (<u>see</u> Settlement Agreement 1-2); and a Settlement Agreement that allowed Plaintiffs to reduce their outstanding loan obligations for substantially less than the total debt due and payable.  (See Compl. ¶ 30.)  Indeed, these sophisticated parties each agreed:

> "(i) that it has fully reviewed this Agreement and has had the opportunity to seek advice from independent counsel of its own choosing in that regard; (ii) that it fully understands the terms of this Agreement and has entered into this Agreement voluntarily ***without any coercion or duress*** on the part of any person or entity; [and] (iii) that it was given adequate time to consider all implications of this Agreement prior to entering into it . . . ."

(Settlement Agreement § 14 (emphasis added).)

Furthermore, even if Plaintiffs had sufficiently pled duress, Plaintiffs are barred from asserting any such claim, because they immediately accepted the benefits of the Settlement Agreement and did not seek to void the Settlement Agreement in a timely manner.  "One who

---

[3]   Florida law is no different.  <u>Peralta</u> v. <u>Peralta Food, Corp.</u>, 506 F. Supp. 2d 1274, 1280 (S.D. Fla. 2007) (duress under Florida law requires allegations "(a) that the act sought to be set aside was effected involuntarily and thus not as an exercise of free choice or will and (b) that this condition of mind was caused by some improper and coercive conduct of the opposite side"); <u>Id.</u> at 1280, 1282 (holding that threat to institute a civil action or to enforce a judgment did not constitute duress as a matter of law).

would repudiate a contract procured by duress, must act promptly, or he will be deemed to have elected to affirm it." Bethlehem Steel Corp. v. Solow, 63 A.D.2d 611, 612 (N.Y. App. Div. 1978).  Instead of immediately challenging the Settlement Agreement, Plaintiffs waited until March 2011 to object on duress grounds, more than two years after the Settlement Agreement was executed in February 2009.  (Compl. ¶¶ 16-19.)  This delay of more than two years to challenge the Settlement Agreement eliminates any possible duress claim.  See VKK Corp. v. Nat'l Football League, 244 F.3d 114, 122-25 (2d Cir. 2001) (failure to allege duress for two and a half years waived duress claim); Id. at 123 ("Delays as short as six months have been held to constitute forfeiture of [a duress] claim.") (citation omitted); Cappelli Enters., Inc. v. F&J Cont'l Food Corp., 16 A.D.3d 609, 610-11 (N.Y. App. Div. 2005) (claim of duress waived as untimely where claim was first raised just under two years after contract was signed).

Moreover, Plaintiffs ratified the Settlement Agreement by performing under its terms and accepting its benefits, thus negating any duress claim that may have existed.  Performing under a contract, including making any required payments, ratifies the agreement and eliminates any duress claim.  Chase Manhattan Bank, 13 A.D.3d at 874 (compliance with a settlement agreement for two and a half years reveals intention to affirm the agreement); Niosi v. Niosi, 226 A.D.2d 510, 511-12 (N.Y. App. Div. 1996).  Coupled with their failure to object to the Settlement Agreement, Plaintiffs' initial attempt to comply with the agreement, (Compl. ¶ 21), demonstrates that they ratified the contract and thereby waived any potential claims of duress.

## B.   The Settlement Agreement Is Binding Upon Plaintiffs And Bars the Instant Action

Having failed to allege that Plaintiffs agreed to the terms of the Settlement Agreement or Confessions of Judgment under duress, the Settlement Agreement's Choice of Law Clause, Forum Selection Clause, and Release Clause are binding and enforceable.

      **1.**    **Plaintiffs Agreed To Litigate Disputes In New York County And Could Not Permissibly Bring This Action In A Florida Court**

Plaintiffs agreed to the Settlement Agreement's Choice of Law and Forum Selection Clause selecting New York law as the governing law for disputes arising out of the Settlement Agreement, and adjudication of those disputes in a court in New York County, New York. Accordingly, Plaintiffs have contractually waived their right to bring any causes of action against Defendant, which arise out of the Settlement Agreement, in a Florida court and under Florida law, including any common law claims or claims purportedly brought pursuant to Fla. Stat. § 55.509 seeking to invalidate the Confessions of Judgment or Foreign Judgments.  (See Compl. ¶ 15-17.)  The parties' Choice of Law and Forum Selection Clause is mandatory:

> "This Agreement **shall** be governed by the laws of the State of New York . . . . **All** disputes arising out of or related to this Agreement shall be submitted to the state and federal courts situated in the state of New York in the County of New York, and each Party **irrevocably consents to personal jurisdiction and venue in such courts and waives all objections thereto.**"

(Settlement Agreement § 19 (emphasis added).)

As argued in greater detail in Defendant's pending Amended Motion to Transfer, (DE #9), and Reply Memorandum, (DE #33), the Florida courts are not a valid venue to adjudicate Plaintiffs' claims.  Forum selection clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances."  M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972) (internal quotation and citations omitted).  Choice of law clauses are presumed valid and are generally enforced under Florida law.  Mazzoni Farms, Inc. v. E.I. DuPont De Nemours & Co., 761 So. 2d 306, 311 (Fla. 2000).

      **2.**    **Plaintiffs Granted Defendant An Unconditional Waiver Of Liability**

Pursuant to the Settlement Agreement, Plaintiffs granted Defendant an unconditional release from any and all causes of action.  The broadly-worded Release Clause states, in part:

"Guarantors hereby unconditionally release and forever discharge . . .
[Defendant] . . . of and from any and all claims . . . and causes of action
whatsoever whether based on contract, negligence, bad faith, willful, wanton or
malicious conduct, or any other theory of law or in equity from the beginning of
the world to the date of this agreement, whether . . . mature or unmatured,
known or unknown, accrued or not accrued or contingent, which the
undersigned have, had, or may hereafter have against [Defendant]."

(Settlement Agreement § 11.)  Releases are contracts that "must be interpreted to give effect to

the intent of the parties as indicated by the language employed [and] . . . bar suits on causes of

action arising on or prior to the date of their execution but will not bar subsequent claims unless

they are specifically embraced within the release or fall within the fair import of its terms."  See

Rubycz-Boyar v. Mondragon, 15 A.D.3d 811, 812 (N.Y. App. Div. 2005) (internal quotations

and citations omitted).

Because the Release Clause is binding, Plaintiffs have waived their right to assert any

claims that Defendant acted fraudulently or committed other bad acts during and prior to its

negotiations with Plaintiffs over the Settlement Agreement and Confessions of Judgment.

Furthermore, because Defendant's enforcement of the Confessions of Judgment falls within the

fair import of the Release Clause, Plaintiffs have additionally waived their right to assert any

claims that have arisen "hereafter" that are contingent upon Defendant enforcing the Confessions

of Judgment pursuant to the process reflected in the negotiated Settlement Agreement.

Accordingly, any claims against Defendant challenging the terms or validity of the Settlement

Agreement, or the enforceability of the Confessions of Judgment, should be dismissed as waived.

## II
## THE FOREIGN JUDGMENTS ARE VALID UNDER NEW YORK LAW

Plaintiffs' overlapping causes of action seeking to invalidate the Foreign Judgments

(Count I) and seeking declaratory relief that the Foreign Judgments are not valid (Count II), are

meritless and should be dismissed.  When courts evaluate a foreign judgment, "the jurisdiction of

the foreign court to enter the judgment, as well as the validity of the judgment, must be analyzed under the law of the foreign state [and the court] therefore must look to New York law to determine whether this judgment is valid." Cadle Co. v. Jay, 907 So. 2d 634, 637 (Fla. 3d DCA 2005) (internal citations omitted). "[Foreign] judgments may be collaterally attacked for either lack of jurisdiction or extrinsic fraud." Id. Plaintiffs cannot allege that jurisdiction was improper or the existence of extrinsic fraud as a matter of law. The Foreign Judgments are therefore valid under New York law.

**A.**     **The New York Court Has Personal Jurisdiction Over Plaintiffs**

       Plaintiffs' meritless claim that the New York County court did not have the requisite jurisdiction to enter the Confessions of Judgment is contrary to well-settled New York law, and contradicts Plaintiffs' own sworn statements, signed agreements, and course of conduct. In New York a "judgment by confession may be entered, without an action, either for money due or to become due . . . upon an affidavit executed by the defendant." N.Y. C.P.L.R. 3218(a). A judgment creditor is not required to serve a debtor with notice or service of process before entering a confession of judgment, because the debtor's affidavit demonstrates his consent to the jurisdiction of the court. See Besen v. Kelley, 83 Misc. 2d 362, 363 (N.Y. Sup. Ct. 1975) ("The provisions of CPLR 3218 [] provide for entry of judgment without commencement of an action and service of a summons, the affidavit of the judgment debtor being taken as his consent for the entry of judgment against him and his submission to the jurisdiction of the court."). Plaintiffs do not contest that they signed the Confessions of Judgment, and consequently consented to jurisdiction in New York. (See Compl. ¶ 31.) Each Confession of Judgment states:

> "Pursuant to Section 3218 of the New York Civil Practice Law and Rules, [Plaintiff] hereby confess[es] judgment for $2,000,000, which is justly due and owing to [Defendant], and ***hereby authorize[s] [Defendant] . . . to enter judgment in the Supreme Court of the State of New York, County of New York***, against me in the amount of $2,000,000."

(Confessions of Judgment ¶ 6.)  Each Confession of Judgment further states:

> "[Plaintiff] unconditionally and irrevocably guaranteed the Borrowers'
> obligations under the Financing Agreement pursuant to a Guaranty . . . .
> Pursuant to the Guaranty, [Plaintiff] irrevocably and ***unconditionally agreed to
> submit to the general jurisdiction of the courts in the state of New York*.**"

(Id. ¶ 5 (emphasis added).)

Additional minimum contacts with New York are not required if a party consents to jurisdiction.  See In re Estate of Schreiter, 169 Misc. 2d 706, 709 (N.Y. Sur. Ct. 1996). However, Plaintiffs have additionally alleged sufficient minimum contacts with New York to demonstrate that they "purposefully availed" themselves of the laws of New York.  See Fischbarg v. Doucet, 9 N.Y.3d 375, 383-84 (2007).  For example, Plaintiffs received a multi-million dollar business loan from a New York-based fund pursuant to a Financing Agreement governed by New York law, (Financing Agreement §§ 12.01, 12.09), entered into a Settlement Agreement governed by New York law and setting New York County as the exclusive venue for adjudicating any disputes (Settlement Agreement § 19), and participated in a strict foreclosure process conducted in compliance with New York law.  (Id. § 2; Compl. ¶ 21); see Georgia-Pac. Corp. v. Multimark's Int'l, Ltd., 265 A.D.2d 109, 111-12 (N.Y. App. Div. 2000) (foreign corporation that conducted no business in New York, did not maintain an office in New York, and maintained no employees in New York was nevertheless subject to personal jurisdiction in New York based on its extensive use of the New York banking system).  Because jurisdiction was proper, the Foreign Judgments should not be upset.

## B.   Plaintiffs Have Failed To Allege Extrinsic Fraud Because They Admit That The Notice Of Default Was Proper And That They Breached The Settlement Agreement

The Foreign Judgments are further valid because Plaintiffs do not allege that the New York court entered the Confessions of Judgment due to extrinsic fraud.  Extrinsic fraud "is fraud which has deprived [a party] of the opportunity to make a full and fair defense."  Altman v.

Altman, 150 A.D.2d 304, 306 (N.Y. App. Div. 1989).  Because Defendant provided Notice of

Default in the exact manner specified under the Settlement Agreement, and because Plaintiffs

admit that they triggered an event of default when Rody filed a voluntary bankruptcy petition,

Plaintiffs were not deprived of any opportunity to assert a full and fair defense.

**1.      Defendant Complied With The Terms Of The Settlement Agreement**

The Settlement Agreement details the requirements for filing the Confessions of

Judgment.  "Upon the occurrence of an Event of Default (***as determined by [Defendant in its]***

***sole discretion***) [Defendant] shall have the absolute right . . . to enforc[e] the Confessions of

Judgment."  (Settlement Agreement § 6(a) (emphasis added).)  To enforce the Confessions of

Judgment for breaches of Sections 5(a) and 5(b), Defendant must provide written notice of the

breach.  Under the Settlement Agreement, "[a]ll notices to the Borrowers and Guarantors shall be

sent via email and overnight mail at the following address: Rodovaldo "Rody" Gomez, 16579

SW54 Court, Miramar, Florida 33027, rodyjr@rodytrucks.com, rodindy@comcast.net."  (Id.

§ 15.)  If any breach is "not cured (as determined by [Defendant] in its sole discretion) after 1

business day written notice," Defendant may file the Confessions of Judgment.  (Id. § 5(b).)

Plaintiffs admit that the Settlement Agreement includes "provision[s] that a Notice of Default

would be sent only to RODOVALDO, that [Defendant] could declare a default in its sole and

absolute discretion and that the Guarantors would only have one (1) day to cure."  (Compl. ¶ 17.)

Having determined in its sole discretion that Borrower and/or Plaintiffs breached the

Settlement Agreement, on February 1, 2011, Plaintiffs sent a Notice of Default to the addresses

specified in the Notice provision, stating:

> "[Defendant] has determined that the Borrowers and/or Guarantors have
> violated §§4(a), (d), (e), & (g) of the Settlement Agreement, by inter alia,
> intentionally withholding from [Defendant] significant portions of the Specified
> Collateral (including numerous vehicles owned by Borrowers at the time the
> Settlement Agreement was executed)."

(See Notice of Default; Compl. ¶¶ 23-24, 29.)  *Two* businesses days later, on February 3, 2011,

Plaintiffs responded only to dispute Defendant's determination that they had breached Section 4.

(See Compl. ¶ 29.)  Accordingly, the specified breach was not cured after one business day, and

Defendant filed the Confessions of Judgment.  (See id.)

      Unable to assert any evidence of extrinsic fraud, Plaintiffs have instead challenged

the validity of the Foreign Judgments on conclusory allegations of *intrinsic* fraud.  For example,

Plaintiffs argue that the Notice provision, deadlines to cure, and Defendant's right to determine

in its "sole discretion" if Plaintiffs had breached or cured, are "onerous," "ridiculous/non-

negotiable," and "legally unsupportable."  (Compl. ¶ 17.)  Similarly, Plaintiffs argue that the

Court should substitute Plaintiffs' own determination that there was no breach or event of default

for Defendant's sole determination.  (Compl. ¶¶ 23-24.)  However, allegations of intrinsic fraud

should not be considered when reviewing the validity of a foreign judgment, and the Complaint

should be dismissed for this reason as well.  See O'Keefe v. O'Keefe, 833 So. 2d 157, 161 (Fla.

2d DCA 2002); see also RBFC One, LLC, v. Zeeks, Inc., 367 F. Supp. 2d 604, 623-24 (S.D.N.Y.

2005) (finding no breach of contract where defendants failed to perform pursuant their

contractual right to opt out in their "sole discretion").

    **2.**    **Plaintiff Triggered An Event Of Default When Rody Filed
A Voluntary Bankruptcy Petition**

      Regardless of any challenges to Defendant's Notice of Default, Plaintiffs admit that

they defaulted on the terms of the Settlement Agreement when Rody became a debtor in a case

under 11 U.S.C. §§ 101, et seq. by filing a voluntary petition for bankruptcy in January 2010.

(See Compl. ¶ 32.)  Pursuant to the Settlement Agreement, "[Defendant] shall be entitled to file

or otherwise enforce the Confessions of Judgment upon the occurrence of *any* Event of Default."

(Settlement Agreement § 3(b) (emphasis added).)  The Settlement Agreement also does not

require Defendant to provide a Notice or an opportunity to cure if a Plaintiff files a voluntary

bankruptcy petition.  (Id. § 5(c).)  Therefore, because Rody became a debtor in a case pursuant to

11 U.S.C. §§ 101, et seq., Defendants were entitled to enforce all of the Confessions of Judgment

without any preconditions, and the Foreign Judgments should be enforced.

### III
### THE COURT SHOULD DECLINE TO DECIDE WHETHER RODY'S DEBTS ARE DISCHARGEABLE, AND DISMISS THE COMPLAINT BECAUSE THE FOREIGN JUDGMENTS ARE VALID

The Court should decline to consider whether Rody's debts to Defendant were

discharged in his bankruptcy -- an issue advanced two weeks before Plaintiffs filed the instant

action, and currently pending in the Bankruptcy Proceedings with a hearing set for June 27,

2011-- and dismiss Plaintiffs' challenges to the Foreign Judgments because the Foreign

Judgments are valid for the reasons discussed above.  The issue of dischargeability for a

particular debt is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I), and appropriate for

adjudication in the Bankruptcy Court.  This Court need not resolve whether Rody's debt was

discharged in bankruptcy to determine whether the Foreign Judgments are valid.  If this Court

concludes that the Foreign Judgments are otherwise valid and enforceable against Rody because

jurisdiction was proper and there was no extrinsic fraud, the Complaint should be dismissed for

the reasons set forth herein.  The question of whether the Foreign Judgment against Rody is

discharged will be adjudicated in the Bankruptcy Proceedings.

### IV
### PLAINTIFFS FAIL TO STATE A CLAIM FOR EACH OF THEIR COMMON LAW CLAIMS

Putting aside that Plaintiffs have waived any such claims, Plaintiffs' common law

causes of action for defamation, breach of the implied covenant of good faith and fair dealing,

abuse of process, and fraud each fail to state a claim upon which relief can be granted.

### A.   Plaintiffs Fail To State A Claim For Defamation

Plaintiffs' claim for defamation must be dismissed because Plaintiffs have failed to allege a false statement that would subject Defendant to liability, and because any statements made in the course of a judicial proceeding are afforded absolute privilege.  To plead a claim for defamation, a plaintiff must allege "a false statement, published without privilege or authorization to a third party, constituting fault as judged by, at a minimum, a negligence standard . . . ."  Dillon v. City of N.Y., 261 A.D.2d 34, 38 (N.Y. App. Div. 1999).  Plaintiffs have failed to allege a single false statement published by Defendant.  (See Compl. ¶ 66.)

Moreover, Plaintiffs have failed to adequately plead defamation as a matter of law because any statements made in the course of obtaining or recording the judgments against Plaintiffs are absolutely privileged as statements made in the course of judicial proceedings.  See Sinrod v. Stone, 20 A.D.3d 560, 561 (N.Y. App. Div. 2005) ("Statements made by parties, attorneys, and witnesses in the course of a judicial or quasi-judicial proceeding are absolutely privileged, notwithstanding the motive with which they are made."); Mosesson v. Jacob D. Fuchsberg Law Firm, 257 A.D.2d 381, 382 (N.Y. App. Div. 1999).  Accordingly, Plaintiffs' claim for defamation should be dismissed.

### B.   Plaintiffs Fail To State A Claim For A Breach Of The Implied Covenant Of Good Faith And Fair Dealing

Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing must fail because they have not alleged that Defendant took any action that was not permitted by the Settlement Agreement.  A claim for breach of the implied covenant of good faith and fair dealing is meritless where it merely alleges that a defendant exercised a contractual right. Chrysler Credit Corp. v. Dioguardi Jeep Eagle, Inc., 192 A.D.2d 1066, 1067-68 (N.Y. App. Div. 1993) (creditor did not breach the implied covenant where the agreement gave the creditor "sole

discretion" to terminate financing, and the creditor exercised that right). Here, Plaintiffs fail to allege that Defendant took any actions not permitted by the contract.

Plaintiffs' vague claim appears to be based on two acts: (1) Defendant filing the Confessions of Judgment in a court purportedly without personal jurisdiction over Plaintiffs; and (2) Defendant issuing the Notice of Default to one address and allowing one day to cure. As discussed above, the Confessions of Judgment were properly filed in New York because Plaintiffs consented to jurisdiction as a matter of law. See Section II, supra. Further, as also discussed above, the Settlement Agreement specifically permits Defendant to issue a Notice of Default in the precise manner it was issued. See Section II.B.1., supra. Because Plaintiffs have failed to allege that Defendant took a single action not permitted by the Settlement Agreement, the fourth cause of action should be dismissed.

**C.      Plaintiffs Fail To State A Claim For Abuse Of Process**

Plaintiffs' claim for abuse of process fails because the Complaint does not allege that Defendant issued process without justification. To state a claim for abuse of process, a plaintiff must allege that there was (1) "regularly issued process . . . compelling the performance or forebearance of some prescribed act" (2) a motivation to "do harm without . . . economic or social excuse or justification," and (3) that the defendant was "seeking some collateral advantage or corresponding detriment to the plaintiff which is outside the legitimate ends of the process." Julian J. Studley, Inc. v. Lefrak, 41 N.Y.2d 881, 883-84 (1977) (internal citations and quotations omitted).

As an initial matter, the Complaint nowhere alleges the issuance of any process whatsoever. Plaintiffs indicate only that Defendant sent Plaintiffs a Notice of Default and filed the Confessions of Judgment. (Compl. ¶ 77.) As a matter of law, however, neither of those actions constitutes the issuance of process. Studley, 41 N.Y.2d at 884 (an affidavit cannot be

regarded as process); <u>Walentas</u> v. <u>Johnes</u>, 257 A.D.2d 352, 354 (N.Y. App. Div. 1999) (an

allegation of the "[c]ommencement of an action, even with malicious intent, is insufficient" to

state a claim for abuse of process).  Moreover, an assertion that a judgment creditor issued

process to enforce its judgment -- even if that judgment is subsequently overturned -- is

insufficient to allege that process was issued for a purpose "outside the legitimate ends of the

process."  <u>Williams</u> v. <u>Pinks, Feldman & Brooks</u>, 141 A.D.2d 723, 724 (N.Y. App. Div. 1988).

Because Plaintiffs do not allege that process was issued for an improper purpose, or even issued

at all, the fifth cause of action should be dismissed.

**D.**     **Plaintiffs Fail To State A Claim For Fraud**

   Plaintiffs' fraud claim should also be dismissed because the Complaint fails to allege

Defendant made any false statements upon which Plaintiffs relied.  To state a claim for fraud, a

plaintiff must allege a representation of a material existing fact, falsity, scienter, reasonable

reliance, and injury.  <u>See</u> <u>N.Y. Univ.</u> v. <u>Cont'l Ins. Co.</u>, 87 N.Y.2d 308, 318 (1995).  To plead

fraud "with particularity," as required pursuant to Fed. R. Civ. P. 9(b), a plaintiff must

"(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker,

(3) state where and when the statements were made, and (4) explain why the statements were

fraudulent."  <u>Mills</u> v. <u>Polar Molecular Corp.</u>, 12 F.3d 1170, 1175 (2d Cir. 1993); <u>see</u> <u>also</u> <u>Ziemba</u>

v. <u>Cascade Int'l, Inc.</u>, 256 F.3d 1194, 1202 (11th Cir. 2001) (Rule 9(b) is satisfied if the

complaint alleges "precisely what statements were made in what documents or oral

representations;" the time, place, and person responsible for making the statements; the manner

in which they misled the plaintiff; and the benefit of the purported fraud to the defendant).

Because Plaintiffs have not sufficiently pled fraud with particularity, their fraud claim fails.

   Plaintiffs do not specify exactly which statements they claim were fraudulent or how

they relied on them, and instead generally assert that Defendant "acted fraudulently."  (<u>See</u>

Compl. ¶¶ 80, 81.)  The purported fraudulent "actions" include: (i) issuing a Notice of Default without specifying the "nature/specifics of the default;" (ii) entering the Confessions of Judgment without responding to questions regarding the Notice of Default; (iii) entering the Confessions of Judgment without personal jurisdiction over Plaintiffs; and (iv) entering the Confessions of Judgment despite the order of discharge in Rody's Bankruptcy Proceeding. (Compl. ¶ 81.)  Notably, not a single of these assertions describes a statement, and Plaintiffs admit as much in the Complaint.  (See Compl. ¶ 82.  Such generalized allegations of purportedly fraudulent action cannot suffice to plead a "statement[] that the plaintiff contends w[as] fraudulent." Mills, 12 F.3d at 1175; Cohen v. Houseconnect Realty Corp., 289 A.D.2d 277, 278 (N.Y. App. Div. 2001).

Moreover, Plaintiffs fail to identify any individuals who made a false statement, or the time or place where such a statement might have been made.  (See Compl. ¶ 81).  A mere vague allegation that generally attributes purported statements to a defendant is insufficient to satisfy Rule 9(b). Mills, 12 F.3d at 1175.  To the extent that Plaintiffs' fraud claims arise from statements purportedly made in the negotiation and execution of the Settlement Agreement, such claims are barred by the Release Clause.  Rubycz-Boyar, 15 A.D.3d at 812 (a general release "bar[s] suits on causes of action arising on or prior to the date of their execution").  Because Plaintiffs have failed to allege with particularity any actionable fraudulent statements made by Defendant, the sixth cause of action should be dismissed.

## CONCLUSION

For all of the foregoing reasons, Defendant's motion to dismiss the Verified Complaint, with prejudice, should be granted.

## LOCAL RULE 7.1(A)(3) CERTIFICATION

Pursuant to Local Rule 7.1(a)(3), undersigned counsel for Defendant certifies that the

undersigned has conferred with Plaintiffs' counsel in a good faith effort to resolve the issues but

has been unable to do so.

Dated: May 24, 2011

                                        Respectfully submitted,


                                        By      /s/ Hal M. Lucas                
                                              Gregory S. Grossman
                                              (Fla. Bar No.: 896667)
                                              ggrossman@astidavis.com
                                              Hal M. Lucas
                                              (Fla. Bar No.: 0853011)
                                              hlucas@astidavis.com
                                              ASTIGARRAGA DAVIS MULLINS &
                                                  GROSSMAN, P.A.
                                              701 Brickell Avenue, 16th Floor
                                              Miami, Florida  33131
                                              Telephone: (305) 372-8282
                                              Facsimile: (305) 372-8202
                                              Attorneys for Defendant Fortress Value
                                                  Recovery Fund I LLC f/k/a D.B.
                                                  Zwirn Special Opportunities Fund,
                                                  L.P.


                                              Scott S. Balber (admitted Pro Hac Vice)
                                              sbalber@chadbourne.com
                                              CHADBOURNE & PARKE LLP
                                              30 Rockefeller Plaza
                                              New York, NY  10112
                                              Telephone: (212) 408-5100
                                              Facsimile: (212) 541-5369
                                              Attorney for Defendant Fortress Value
                                                  Recovery Fund I LLC f/k/a D.B.
                                                  Zwirn Special Opportunities Fund,
                                                  L.P.

<u>**CERTIFICATE OF SERVICE**</u>

**I hereby certify** that on May 24, 2011, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system.  I further certify that the foregoing document is being served this day on the following counsel in the manner specified.

/s/ Hal M. Lucas
_____
Hal M. Lucas

<u>**SERVICE LIST**</u>

David B. Haber, Esq.
dhaber@dhaberlaw.com
Law Offices of David B. Haber, P.A.
201 S. Biscayne Blvd., Suite 1205
Miami, Florida 33131
Telephone: (305) 379-2400
Facsimile: (305) 379-1106
Counsel for Plaintiffs Rodovaldo Rody
    Gomez, Saby Gomez de Molina, and
    Rody Gomez  a/k/a Rody Gomez Jr.
Served Via Notice of Electronic Filing
    generated by CM/ECF

David Thomas Podein
dpodein@dhaberlaw.com
Law Offices of David B. Haber, P.A.
201 S. Biscayne Blvd., Suite 1205
Miami, Florida 33131
Telephone: (305) 379-2400
Facsimile: (305) 379-1106
Counsel for Plaintiffs Rodovaldo Rody
    Gomez, Saby Gomez de Molina, and
    Rody Gomez  a/k/a Rody Gomez Jr.
Served Via Notice of Electronic Filing
    generated by CM/ECF

Lindsey Fallon Thurswell
lthurswell@dhaberlaw.com
Law Offices of David B. Haber, P.A.
201 S. Biscayne Blvd., Suite 1205
Miami, Florida 33131
Telephone: (305) 379-2400
Facsimile: (305) 379-1106
Counsel for Plaintiffs Rodovaldo Rody
    Gomez, Saby Gomez de Molina, and
    Rody Gomez a/k/a Rody Gomez Jr.
Served Via Notice of Electronic Filing
    generated by CM/ECF