**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Case No.: 11-cv-21155-KMM**

RODOVALDO RODY GOMEZ, individually,
SABY GOMEZ DE MOLINA, individually,
and RODY GOMEZ a/k/a RODY GOMEZ JR.,
individually,

       Plaintiff,

vs.

D.B. ZWIRN SPECIAL OPPORTUNITIES
FUND, L.P.,

       Defendant.

_____/

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE VERIFIED COMPLAINT**

       The Plaintiffs, RODOVALDO RODY GOMEZ ("RODOVALDO"), SABY GOMEZ DE MOLINA ("SABY") AND RODY GOMEZ a/k/a RODY GOMEZ JR. ("RODY") (hereinafter RODOVALDO, SABY and RODY will be collectively referred to as the "Plaintiffs"), by and through their undersigned counsel, hereby Responds in Opposition to the Defendant's, D.B. ZWIRN SPECIAL OPPORTUNITIES FUND, L.P. ("ZWIRN" or "Defendant"), Motion to Dismiss the Verified Complaint and Incorporated Memorandum of Law ("Motion to Dismiss") [DE #36].

**I.      SUMMARY OF PLAINTIFFS' RESPONSE**

       1.      The Defendant argues that the Plaintiffs' Verified Complaint should be dismissed because the Plaintiffs failed to allege duress in order to invalidate the Settlement Agreement[1]. However, the Plaintiffs are not attempting to invalidate the Settlement Agreement, but instead

_____

[1] Capitalized terms set forth in this Response without definition are used herein with the same definitions set forth in the Plaintiffs' Verified Complaint and Motion for Remand.

state that the Foreign Judgments are void due to a lack of personal jurisdiction and due process, thus the Motion to Dismiss should be denied.

2.      The Defendant states that the Settlement Agreement bars the Instant Lawsuit from being filed in Florida. On the contrary, the forum selection clause contained in Settlement Agreement does not bar the Instant Lawsuit in Florida. Enforcing the forum selection clause would be greatly unfair and unreasonable under the circumstances and would deny Plaintiffs' of their day in court, thus the Motion to Dismiss should be denied.

3.      The Defendant alleges that the Plaintiffs' agreed to litigate this dispute in New York and waived their right to bring this action in Florida.  However, under F.S. §55.509 the Plaintiffs were required by law to file this action in Miami-Dade County, Florida.  Accordingly, the Motion to Dismiss should be denied.

4.      The Defendant further states that the Foreign Judgments are Valid under New York Law and that the New York Court had personal jurisdiction over the Plaintiffs.  The Defendant's assertion is false and contrary to established New York, Florida and Federal due process legal requirements. The Plaintiffs have asserted in their Verified Complaint that they have no connection, involvement, relationship and/or ties to the State of New York and thus the New York Court had absolutely no minimum contacts with the Plaintiffs to afford jurisdiction over them. Thus, due to the alleged lack of personal jurisdiction over the Plaintiffs, the Foreign Judgments are void and invalid. Thus, the Motion to Dismiss should be denied.

5.      The Defendant alleges that it complied with the terms of the Settlement Agreement and thus the Foreign Judgments are valid and enforceable.  However, Plaintiffs properly assert in their Verified Complaint that the Defendant breached the Settlement Agreement by fabricating a default and filing the Confessions of Judgment against the Plaintiffs.

Furthermore, the release provision in the Settlement Agreement does not waive the Defendants' performance obligations under the Settlement Agreement and/or future frauds committed by the Defendant upon the Plaintiffs.   In the Instant Lawsuit, Plaintiffs specifically assert that the Defendant has both violated the Settlement Agreement and fraudulently procured defaults against the Plaintiffs.  Accordingly, the Motion to Dismiss should be denied.

6.     The Defendant declares that the alleged "default" of the Settlement Agreement was the filing of RODY's Bankruptcy Proceedings; however, the enforcement of a bankruptcy default clause is an illegal provision in any contract/agreement and thus the Foreign Judgments entered as a result of the "default" are unenforceable as a matter of law. Thus, the Defendant's Motion to Dismiss should be denied.

7.     Lastly, the Defendants' Motion to Dismiss is improper in that it argues the truth and veracity of the facts contained in the Verified Complaint. Thus, the Motion to Dismiss must be denied, since all well-pled factual allegations of the Verified Complaint must be deemed admitted for purposes of ruling upon the Motion to Dismiss.

## II. ALLEGATIONS OF THE VERIFIED COMPLAINT WHICH MUST BE DEEMED ADMITTED FOR PURPOSES OF THE MOTION TO DISMISS

8.     The Motion to Dismiss the Verified Complaint contends that: (1) the type of duress alleged by the Plaintiffs does not relieve the Plaintiffs' contractual liabilities under the Settlement Agreement and thus the Plaintiffs' duress claims fail; and (2) Plaintiffs' causes of action for defamation, breach of covenant of good faith and fair dealing, abuse of process, and fraud should be dismissed for failure to state a claim because the Plaintiffs consented to jurisdiction in New York and the Foreign Judgments should be afforded full faith and credit. *See* Motion to Dismiss, pp. 1-2.

9.     The Court should deny the Motion to Dismiss because: (1) ZWIRN's arguments

refer to matters outside the four corners of the Complaint and raise factual issues that are unsuitable for disposition at this time; (2) the factual allegations set forth in the Complaint clearly allege that the Foreign Judgments are improper and unenforceable against the Guarantors due to a lack of personal jurisdiction and because they were fraudulently induced; and (3) the factual allegations in the Complaint clearly state causes of action for defamation, breach of covenant of good faith and fair dealing, abuse of process, and fraud, and all said factual allegations must be accepted as true in a motion to dismiss.

10.     The following allegations of the Plaintiffs' Verified Complaint must be deemed admitted for purposes of ruling on the Motion to Dismiss:

   a. On or about June 29, 2007, the Corporations and Plaintiffs executed several Loan Documents a Financing Agreement with Defendant and the Plainitiffs executed a Guaranty, guaranteeing the obligations owed by the Corporations under the Financing Agreement. See Compl. ¶14.
   b. On or about September 30, 2008, the Corporations began experiencing severe financial hardship and eventually defaulted under the terms of the Financing Agreement. See Compl. ¶15.
   c. On February 16, 2009, Defendant contacted the Corporations and the Plaintiffs and advised them that the Defendant would be coming to Miami-Dade County, Florida to meeting with Corporations and Guarantors on February 17, 2009 (i.e. - - one day later). See Compl. ¶16.
   d. On February 17, 2009, Defendant and its attorneys from New York met with the Corporations and Plaintiffs and demanded immediate turnover of the Corporations' assets, execution of a Settlement Agreement and execution of Confessions of Judgment in the amount of $2 million. *Id.*
   e. The terms of the Settlement Agreement and the Confessions of Judgment were non-negotiable and were executed by the Plaintiffs under duress and due to Defendant's immediate demand, persistence, threat of collection efforts and/or potential lawsuit for in excess of $34 Million. *Id.*, Compl. ¶17.
   f. The Settlement Agreement included the ridiculous/non-negotiable and legally unsupportable provision that Defendant could declare a default in its sole discretion and that the Plaintiff would only have one (1) day to cure. *Id.*
   g. Defendant falsely represented to the Plaintiffs that their execution of the Settlement Agreement and relinquishment of all Collateral would satisfy all prior liability in which the Plaintiffs owed to the Defendant under the Loan Documents. *Id.*
   h. Under duress and the belief that executing the Settlement Agreement and Confessions of Judgment would relieve the Plaintiffs and Corporations from

all future liability to Defendant, the Plaintiffs and the Corporations executed the Settlement Agreement in Miami-Dade County, Florida. *Id.*

i. At the time of execution of the Settlement Agreement and Confessions of Judgment, the Plaintiffs had no minimum contacts with New York, there was no pending New York lawsuit, the Plainitffs resided in Florida and the Corporations had their principal place of business in Miami-Dade, Florida. See Compl. ¶18.

j. In addition, at the execution of the Settlement Agreement, Defendant and its attorneys' came to Miami-Dade, Florida to meet with the Plaintiffs and the Settlement Agreement and the Confessions of Judgment were all executed and notarized in Miami-Dade County, Florida. *Id.*

k. On February 18, 2009, the day after signing the Settlement Agreement, the Corporations and Plaintiffs complied with the terms of the Settlement Agreement by turning-over all the specified collateral, control mechanisms and additional items set forth in the Settlement Agreement. See Compl. ¶21.

l. During Liquidation, Defendant's Agent did not request the assistance nor the cooperation of the Plaintiffs, nor of any of the Corporations' former employees with the sole exception of one request by Agent to SABY. *Id.* T

m. The Plaintiffs never heard from Defendant again for a period of twenty-three (23) months, when the two (2) year limitation on the Confessions of Judgment was about to expire. See Compl. ¶22.

n. Contrary to Defendant's representations, on February 1, 2011, on the eve of the expiration of the Confessions of Judgment Defendant sent RODY, via e-mail, a Notice of Default. See Compl. ¶23.

o. The Notice of Default was only addressed to RODOVALDO and to no other parties/Plaintiffs *Id.*

p. In the Notice of Default, Defendant merely alleged that RODOVALDO "intentionally withheld significant portions of specified collateral". See Compl. ¶24. To date, Defendant has failed to identify what the specified collateral is alleged to be "withheld". *Id.*

q. The Plaintiffs timely responded to the Notice of Default within one (1) day of receiving a copy of same via Federal Express Mail. See Compl. ¶29.

r. The Plaintiffs have stated several times that they did not interfere with Defendant's rights to the Collateral nor did the Plaintiffs intentionally withhold any Collateral. See Compl. ¶24

## III.   ARGUMENT AND INCORPORATED MEMORANDUM OF LAW

### A.  STANDARD OF REVIEW UNDER RULE 12(B)(6)

Motions to dismiss for failure to state a claim are "viewed with disfavor and rarely granted." *Brooks v. Blue Cross & Blue Shield, Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997). Indeed, "[t]he threshold of sufficiency that a complaint must meet to survive a motion to dismiss

for failure to state a claim is . . . 'exceedingly low.' " *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 703 (11th Cir. 1985) (citing *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev.*, 711 F.2d 989, 995 (11th Cir. 1983)); *accord SEC v. Dunlap*, 2002 WL 1007626 at *1 (S.D. Fla. March 27, 2002) ("The potential obstacle to the plaintiff's ability to proceed further with the prosecution of his or her case is not an extremely onerous one . . . .").

"To survive dismissal, the complaint's allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *James River Ins. Co. v. Ground Down Eng'g, Inc.*, 540 F.3d 1270, 1274 (11th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotation omitted). In ruling on a motion to dismiss, the court must accept as true all well pled factual allegations and view them in a light most favorable to the nonmoving party. *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1198 n.2 (11th Cir. 2001). In order to survive a motion to dismiss, the factual allegations of the Complaint "must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true". *Bell Atl. Corp.* at 545. Plaintiffs have met this standard for each of their causes of action.

**B.   F.S. §55.509 REQUIRES THE INSTANT LAWSUIT TO BE FILED IN MIAMI-DADE COUNTY FLORIDA**

Pursuant to F.S. §55.509, the Plaintiffs filed the instant lawsuit in order to contest the validity of the Foreign Judgments filed against them. *See* F.S. §55.509.  F.S. §55.509 specifically contemplates that any litigation over the validity of the foreign judgment should  have been initiated by the Plaintiffs in Miami-Dade County, Florida, i.e. - - the circuit court in which the Foreign Judgments were recorded.   *Cutler v. Harrison*, 792 So.2d 574, 575 (Fla. 3d DCA 2001); F.S. §55.509; *Williams v. Cadlerock Joint Venture, L.P.*, 980 So.2d 1241, 1243 (Fla. 4th DCA 2008) (citing *Wellington v. Dep't of Revenue ex rel. Kober,* 708 So.2d 1040, 1040 (Fla. 4th DCA

1998) (If the defendant did not have the opportunity to contest jurisdiction in the foreign court, he may raise the issue subsequently in a proceeding brought to enforce the judgment)). If the Instant Lawsuit were brought in the New York Federal Court, as the Defendant absurdly asserts, the New York Federal Court would be charged with the unreasonable task of determining whether or not the Foreign Judgments are enforceable in Florida pursuant to F.S. §55.509 - - such a decision should be left to a Florida Court to interpret the application and interpretation of Florida Law.

> 1. **The Plaintiffs' Allege That The Foreign Judgments Are Void Due To A Lack Of Personal Jurisdiction And Due Process - - Not Due To Duress**

The Defendant's Motion to Dismiss states that the Plaintiffs allege duress in order to avoid liability under the Settlement Agreement. *See* Motion to Dismiss, p. 7.  On the contrary, the allegations of the Plaintiffs' Verified Complaint do not allege duress to avoid the terms of the Settlement Agreement.  Instead, the Plaintiffs allege that they were not afforded due process and that the New York Court lacked personal jurisdiction over them to enforce the Foreign Judgments. Furthermore, despite the Defendant's contention, the Plaintiffs do not seek to invalidate the Settlement Agreement, instead the Plaintiffs' Verified Complaint merely seeks relief by requiring Defendant to follow procedural due process requirement and to require a real rather than a fictitious default before obtaining a judgment against Plaintiffs.  *See* Motion to Dismiss, pp. 7-11.

Contrary to the Defendant's assertions that the Plaintiffs allege duress, the Plaintiffs in fact state that they were in an unequal bargaining power when executing the Settlement Agreement and were not afforded due process when the New York Judgments were entered by the New York Court.  While the Defendant alleges that the Plaintiffs consented to jurisdiction

LAW OFFICES OF DAVID B. HABER, P.A.
201 S. BISCAYNE BLVD., SUITE 1205, MIAMI, FLORIDA 33131

and were sophisticated parties (a factual allegation contrary to the assertions in the Plaintiffs' Complaint), in order for the New York Court to enter the Foreign Judgments against the Plaintiffs, minimum contacts is still required to afford Plaintiffs their due process rights. *Diamond Crystal Brands, Inc. v. Food Movers Intern., Inc.*, 593 F.3d 1249, 1268 (11th Cir. 2010) *cert. denied*, 131 S.Ct. 158 (U.S. 2010) (it is settled that entering a contract with a citizen of another state, standing alone, does not automatically satisfy the minimum contacts test). Accordingly, Defendant's Motion to Dismiss should be denied in its entirety.

Finally, the issue of bargaining power and duress are factors to be considered in determining whether to give credence to a "forum selection clause" such as the one contained in the Settlement Agreement.[2]   Thus, duress and unequal bargaining power was not raised in Plaintiffs' Verified Complaint to invalidate the Settlement Agreement, but rather was raised solely to support the Plaintiffs' position that the forum selection clause of the Settlement Agreement is inoperable as relates to the Instant Lawsuit.[3]

> 2. **The Settlement Agreement Does Not Bar the Instant Action From Being Brought In Florida.**

"Forum selection clauses are presumptively valid and enforceable unless the plaintiff makes a 'strong showing' that enforcement would be unfair or unreasonable under the

---

[2] *Dwyer v. Gen. Motors Corp.*, 853 F.Supp. 690, 693 (S.D.N.Y. 1994) ("Plaintiffs are individuals who are suing a large corporation which possesses considerably greater financial assets. To force plaintiffs to travel to Maryland in order to go forward with their claim would merely increase the financial burdens they already face.  Any added expenses that GM might incur as a consequence of defending itself in this District do not justify shifting these expenses to plaintiffs").

[3] *Allstar Mktg. Group, LLC*, 666 F. Supp. 2d at 1132 (citing *Hernandez v. Graebel Van Lines*, 761 F.Supp. 983, 989 (E.D.N.Y. 1991) "[W]here a disparity between the parties exists, such as an individual plaintiff suing a large corporation, the court may also consider the relative means of the parties in determining whether to transfer.")).

**LAW OFFICES OF DAVID B. HABER, P.A.**
201 S. BISCAYNE BLVD., SUITE 1205, MIAMI, FLORIDA 33131

circumstances." *Rucker v. Oasis Legal Fin., L.L.C.*, 632 F.3d 1231, 1236 (11th Cir. 2011) (quoting *Krenkel v. Kerzner Int'l Hotels Ltd.,* 579 F.3d 1279, 1281 (11th Cir.2009)).

> A forum selection clause is unenforceable when: "(1) its formation was induced by fraud or overreaching; (2) the plaintiff would be deprived of its day in court because of inconvenience or unfairness; (3) the chosen law would deprive the plaintiff of a remedy; or (4) enforcement of the clause would contravene public policy." *Rucker* at 1236.

The forum selection clause contained within the Settlement Agreement is unjust, unreasonable and against the public policy in the State of Florida. The Defendant asserts that the sole conclusion to be made by this Court on deciding whether or not it was proper for the Plaintiffs to bring this action in Florida is whether the Settlement Agreement was executed under duress (Motion to Dismiss pp. 9-11). On the contrary, if enforcement of a forum selection clause will be so gravely difficult and inconvenient that it will for all practical purposes deprive a party of his day in court, a forum selection clause will be deemed unfair, unjust, or unreasonable and will not be upheld. *Id.*

As discussed in more detailed in the Plaintiffs' Memorandum Of Law In Opposition To Defendant's Amended Motion To Transfer [DE #28], the convenience of the parties, the locus of operative facts, the relative means of the parties, the location of relevant documents and the relative ease of access to sources of proof and a forum's familiarity with the governing law all greatly weigh in favor of hearing the instant lawsuit in Miami-Dade County Florida. [DE #28]. While the Defendant properly states that "forum selection clauses are prima facie valid and should be enforced unless it is determined to be unreasonable under the circumstances" (See Motion to Dismiss, p. 10), the Defendant fails to recognize that the Plaintiffs have asserted specific facts before this Court to support the legal conclusion that enforcement of the forum selection clause in the Instant Lawsuit would be unreasonable.

The Plaintiffs' have alleged in its Verified Complaint that the Settlement Agreement and

**LAW OFFICES OF DAVID B. HABER, P.A.**
201 S. BISCAYNE BLVD., SUITE 1205, MIAMI, FLORIDA 33131

Confessions of Judgment were the result of unequal bargaining power between the Plaintiffs and the Defendant, were executed under a state of economic distress and with only one (1) day to sign the Settlement Agreement. Coupled with the unambiguous language of F.S. §55.509, requiring the Plaintiffs to bring the instant lawsuit in Miami-Dade County, Florida, the Plaintiffs could not have reasonably expected to be subjected to New York Jurisdiction when signing the Settlement Agreement, *Rucker* at 1237 (in determining whether or not a forum selection clause would be unreasonable to enforce, the courts should look to determine whether or not, at the signing of the agreement, enforcement of the foreign selection clause over this particular claim was foreseeable by the signing party).  The explicit facts presenting in the Plaintiffs Verified Complaint concerning the unreasonableness of the forum selection clause and the unanticipated enforcement due to F.S. §55.509, clearly indicate that bringing this action in any other location besides Miami-Dade County, Florida would be unreasonable and would deprive the Plaintiffs of their day in court.  *Id.*

Furthermore, the Defendant's blanket assertion that the choice of law provision is "mandatory" and all claims arising between the parties should be controlled by the choice of law provision misses the point of the Plaintiffs' argument. *See* Motion to Dismiss, p. 10.  First, in determining whether a choice of law clause applies to a specific claim, a Court must first examine the scope of the choice of law provision. *See Green Leaf Nursery v. E.I. DuPont De Nemours & Co.,* 341 F.3d 1292, 1300-01 (11th Cir.2003).  Paragraph 19 of the Settlement Agreement states in part that:

> This Agreement shall be governed by the laws of New York applicable to agreements entered into within the State of New York excluding the choice of law rules thereof.  All disputes ***arising out of or related to this Agreement*** shall be submitted to the state and federal courts situated in the state of New York in the County of New York. [Settlement Agreement ¶19]

The Plaintiffs' Verified Complaint does not solely "arise out of or relate to" the Settlement Agreement and thus the choice of law provision is not controlling over the claims presented in the Instant Lawsuit for fraud. *Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1162 (11th Cir. 2009), reh'g denied (Sept. 2, 2009) (citing *Int'l Underwriters AG & Liberty Re-Insurance Corp., S.A. v. Triple I: Int'l Invs., Inc.,* 533 F.3d 1342, 1348-49 (11th Cir.2008) (where the dispute occurs as a fairly direct result of the performance of contractual duties then the dispute can fairly be said to arise out of or relate to the contract in question). Instead, the Plaintiffs filed the Instant Lawsuit in order to stay enforcement of the Foreign Judgments filed against them pursuant to F.S. §55.509. Accordingly, the Plaintiffs properly filed the Instant Lawsuit in the Florida State Court (and this case should properly be remanded to that Florida State Court).

Alternatively, even if New York law applies, the cases cited above reflect that the Plaintiffs have pled sufficient facts to support their claim under F.S. §55.509 that entry of the New York Judgments violates due process requirements under New York law, Florida law and/or Federal law. Thus, the Motion to Dismiss should be denied.

### B. THE FOREIGN JUDGMENTS ARE VOID AND INVALID BECAUSE THE NEW YORK COURT LACKED PERSONAL JURISDICTION OVER THE PLAINTIFFS

The Defendant correctly states that Foreign Judgments may be collaterally attacked for either lack of jurisdiction or extrinsic fraud (See Motion to Dismiss, p. 12) - - in the Instant Lawsuit the Plaintiffs have properly alleged both. *Cadle Co. v. Jay*, 907 So.2d 634, 637 (Fla. 3d DCA 2005).

At the time when the Foreign Judgments were entered, the New York Court lacked personal jurisdiction over the Plaintiffs and had no grounds to support the entry of the Foreign Judgments against the Defendants and thus the Foreign Judgments are invalid as a matter of law. The Defendant claims that the Confessions of Judgment entered against the Plaintiffs are valid

and enforceable under New York law; however, it is clear that New York law does not provide the ultimate protection to Confessions of Judgment as the Defendant indicates.

To begin, "it is well established that confessions of judgment are always closely scrutinized and that courts should adopt a liberal attitude towards vacating a judgment by confession". *In re Guardianship of Boudreau*, 13 Misc.3d 1227(A), 831 N.Y.S.2d 351 (N.Y. Sur. 2006). In support of its Motion to Dismiss, the Defendant cites to *Besen v. Kelley*, 83 Misc.2d 362 (N.Y. Sup. Ct. 1975) for the proposition that the Defendant was not required to serve the debtor with notice or process before entering a confession of judgment. *See* Motion to Dismiss, p. 12. However, *Besen* is distinguishable from the Instant Lawsuit, in that the Plaintiffs do not only allege that they were not afforded notice or process before the Foreign Judgments were entered against them, but the Plaintiffs also allege in the Instant Lawsuit that the Notice of Default was defective and invalid and thus the Foreign Judgments were improperly entered by the New York Court. If, as in the Instant Lawsuit, a plaintiff fails to prove that the defendant received the notice of default and/or was allowed an opportunity to cure, as explicitly provided for under the settlement agreement, New York courts have found the entry of a confession of judgment under these circumstances to be invalid. *Lenchner v. Chasin*, 57 A.D.3d 623, 624, 869 N.Y.S.2d 196, 198 (N.Y. App. Div. 2008) (holding that since the plaintiff failed to prove proper service and receipt of the notice of default, he did not have the right to enter judgment by confession against the defendant under the agreement).

In the Instant Lawsuit, the filing of the Confession of Judgments by the Defendant depended on the contingency of the Plaintiffs defaulting under the Settlement Agreement.  The Defendant still has failed to state and/or indicate how the Plaintiffs defaulted under the Settlement Agreement and where "there is any substantial doubt about whether the contingent

event has occurred, the doubt is resolved in favor of the debtor". N.Y. C.P.L.R. 3218 (McKinney).  Accordingly, the Confessions of Judgment entered against the Plaintiffs are invalid and the New York Court had no jurisdiction to enter the Foreign Judgment against the Plaintiffs due to the invalidity of same. In fact, Plaintiffs specifically raise specific facts to support (along with Affidavits and Exhibits) that they complied by responding to the Notice of Default within one (1) day of receiving same.  Finally, Plaintiffs asserted the fact that the Notice of Default itself was inherently defective and violated the terms of the Settlement Agreement and the good faith and fair dealing requirements of the Settlement Agreement.

The Defendant also wrongfully alleges that "minimum contact with New York are not required if a party consents to jurisdiction". Motion to Dismiss, p. 13. However, "when the debtor is a nonresident, with entry in New York being authorized only because CPLR 3218(a)(1) allows it, constitutional issues may arise". N.Y. C.P.L.R. 3218 (McKinney).  The Confessions of Judgment in the Instant Lawsuit were entered against the Plaintiffs in a far removed and irrelevant forum.  The Plaintiffs simply had/have no minimum contacts with the State of New York and the Settlement Agreement made  and entered into between the Plaintiffs and Defendant occurred outside the State of New York.

In support of Defendant's allegations that the New York Court had personal jurisdiction over the Plaintiff, the Defendant cites to *Georgia-Pac. Corp. v. Multimark's Intern. Ltd.*, 265 A.D.2d 109 (N.Y. App. Div. 2000). In *Georgia-Pac. Corp.*,  the defendant was a Panamanian corporation with its principal place of business in Sao Paulo, Brazil. *Id*. at 111. Unlike the defendant in *Georgia-Pac. Corp.*, the Plaintiffs in the instant lawsuit are not foreign corporations and are afforded the protections of a corporation located within the United States, in particular a corporation incorporated in the State of Florida and conducting business in the State of Florida.

LAW OFFICES OF DAVID B. HABER, P.A.
201 S. BISCAYNE BLVD., SUITE 1205, MIAMI, FLORIDA 33131

Furthermore, in *Georgia-Pac. Corp.*, it was determined that the defendant used a New York bank account "for the receipt of substantially all of the income of [the] foreign corporation and for the payment of substantially all of its business expenses" and thus was subject to personal jurisdiction in the State of New York - - that is not the case with the Plaintiffs and/or Corporations. *Id.*

As exemplified in the Verified Complaint, the Plaintiffs had/have no contacts whatsoever with New York and most certainly did not hold and/or solely deposit money in a New York bank account and/or make payments solely out of a New York bank account.  The Defendant's attempt to mislead this court and state that *Georgia-Pac. Corp.* declares that the New York court had person jurisdiction over the Plaintiffs is simply unfounded and unsupported under New York law. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980); and *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985) (holding that an out of state defendant's consent to a contractual jurisdiction provision conferring jurisdiction out of state is not sufficient to establish personal jurisdiction absent satisfaction of the minimum contacts test).  Accordingly, the Plaintiffs' Verified Complaint should not be dismissed, as the New York Court did not have personal jurisdiction over the Plaintiffs when it entered the Foreign Judgments.

C. **DEFENDANT CANNOT WAIVE ITS PERFORMANCE UNDER THE SETTLEMENT AGREEMENT AND FUTURE FRAUDS**

A parties change of mind or fear of pending limitations on declaring default, does not excuse them from performance of their obligations under a settlement agreement. *See Manning v. New York Univ.*, 299 F.3d 156, 164 (2d Cir. 2002). The Defendant alleges that it complied with the terms of the Settlement Agreement and thus the Notice of Default and Foreign Judgments are valid and enforceable (Motion to Dismiss, pp. 14-15); however, the Defendant is

simply choosing to argue the facts presented in the Plaintiffs' Verified Complaint and thus these allegations fail when determining their validity in a motion to dismiss. *Bell Atl. Corp.* at 545.

Additionally, despite the Defendants allegations that the Plaintiffs have failed to assert extrinsic fraud (Motion to Dismiss, p. 15), the Plaintiffs have stated in specificity that the Notice of Default was fraudulently procured and invalid as it failed to specify with particularity what the alleged default was and thus the subsequent Foreign Judgments entered against the Plaintiffs based upon the faulty Notice of Default constitutes extrinsic fraud. *Aguirre v. Aguirre*, 245 A.D.2d 5, 7, 665 N.Y.S.2d 638, 640 (N.Y. App. Div. 1997) (declaring that extrinsic fraud is a fraud practiced in obtaining a judgment such that a party may have been prevented from fully and fairly litigating the matter).

"Under almost any given state of facts, where to enforce a stipulation would be unjust or inequitable or permit the other party to gain an unconscionable advantage, courts will afford relief" *Bank of New York v. Forlini*, 220 A.D.2d 377, 378 (N.Y. App. Div. 1995) (citing *Goldstein v. Goldsmith,* 243 App.Div. 268, 272, 276 N.Y.S. 861). In the Instant Lawsuit, the Notice of Default was a fraudulent and a blatant attempt by Defendant to merely obtain an uncontested $2 Million Confession of Judgment against the Plaintiffs before the expiration of the Settlement Agreement's two (2) year Time Limit, which was about to expire—not because of any real default by the Plaintiffs, but rather because the Defendant did not receive as much money as it had expected from the liquidation of the collateral.  As in the case of *Bank of New York*, where a defendant was declared in default by the plaintiff without being afforded sufficient notice of the alleged default, the Defendant's attempt to "enforce a technical default to obtain payment of the far greater sum which the [defendant] had originally sought" should not be allowed and should be deemed invalid. *Id.*

Furthermore, the Defendant's conduct constitutes a breach of the Defendant's duty of good faith and fair dealing under the terms of the Settlement Agreement. The Defendant states that the Plaintiffs have failed to allege that the Defendant took a single action not permitted under the Settlement Agreement. *See* Motion to Dismiss, p. 18.   On the contrary, the Plaintiffs Verified Complaint states that the Defendant violated the Settlement Agreement by taking the following actions which were not permitted under the Settlement Agreement:

1. Declaring a default against the Plaintiffs without specific reason and/or cause;

2. Declaring a default against the Plaintiffs in order to obtain a greater monetary award than originally agreed upon in the Settlement Agreement;

3. Sending Plaintiffs a Notice of Default and not allowing Plaintiffs' time to cure;

4. Misleading Plaintiffs into believing that full compliance with the Settlement Agreement would waive future liability; and

5. Failing to specify in the Notice of Default what the alleged default was in order to afford Plaintiffs their contractual right to cure under the Settlement Agreement.

Accordingly, the Defendant, having unreasonably exercised its discretionary rights under the terms of the Settlement Agreement (to declare a default) acted in violation of its implied duty of good faith and fair dealing.  *Cox v. CSX Intermodal, Inc.,* 732 So.2d 1092, 1097 (Fla. 1st DCA 1999) (where the terms of the contract afford a party substantial discretion to promote that party's self-interest, the duty to act in good faith nevertheless limits that party's ability to act capriciously to contravene the reasonable contractual expectations of the other party).  Thus, the Defendant's Motion to Dismiss should be denied in its entirety.

**D. EVENTS OF DEFAULT UNDER BANKRUPTCY LAW IS UNENFORCEABLE**

Despite its assertion in the Notice of Default that Plaintiffs "defaulted" under the

Settlement Agreement by "withholding significant portions of specified collateral" (See Notice of Default), the Defendant now, for the first time in its Motion to Dismiss, attempts to allege that the actual "default" under the Settlement Agreement was the "filing of RODY's Bankruptcy Proceedings". See Motion to Dismiss, p. 14.

As a general rule, enforcing *de facto* cancellation clause for filing a bankruptcy is an illegal provision in any contract/agreement. *I.T.T. Small Bus. Fin. Corp. v. Frederique*, 82 B.R. 4, 5 (E.D.N.Y. 1987); *See also Florida Nat'l Bank & Trust Co. v. Brown,* 47 So.2d 748, 760 (Fla.1949) (holding debtor's filing of a bankruptcy petition did not, as a matter of law, constitute a default under the bankruptcy default clause, or ipso facto clause, of the Agreement). Accordingly, if, as the Defendant states, that a default of the Settlement Agreement occurred upon the filing of RODY's Bankruptcy Proceedings, the default under the Settlement Agreement is invalid and the Foreign Judgments are unenforceable as a matter of law.   Thus, the Defendant's Motion to Dismiss should be denied.

Finally, Defendant asserts in RODY's Bankruptcy Proceedings that it never received the Suggestion of Bankruptcy and that serving the managing member of Defendant is not the same as serving the Defendant with the Suggestion of Bankruptcy.  Defendant cannot have it both ways.  Defendant cannot say that its Notice of Default and Confessions of Judgment are not violations of the Automatic Stay in Bankruptcy (and that RODY's Bankruptcy Discharge was invalid) because Defendant was not properly noticed and in the next breath argue that the purportedly unknown Bankruptcy Proceedings (of which Defendant states it had no knowledge of) is the actual ground/cause for the Notice of Default.  If Defendant was purportedly unaware of the Bankruptcy Proceedings on February 1, 2011, then how could Defendant use that as the alleged grounds for issuing the Notice of Default?  Simply put, the Defendant cannot argue this

position with any credibility.  The Defendant's actions and allegations are clearly contradictory. This is merely the Defendant's attempt to improperly and fraudulently procure a default against the Plaintiffs without any legal or factual justification for its actions and no explanation of what the alleged default actually was.  Accordingly, the Defendant's Motion to Dismiss should be denied in its entirety.

**WHEREFORE**, RODOVALDO, SABY and RODY respectfully request this Court to enter an Order:

(a)  Denying Defendant ZWIRN's Motion to Dismiss in its entirety; and

(b)  Granting such other and further relief as this Court deems just and proper.

## CERTIFICATE OF SERVICE

**WE HEREBY CERTIFY** that on June 3, 2011, the foregoing document was electronically filed with the Clerk of the Court using CM/ECF.  We also certify that the foregoing document is being service this day on the following attorneys, in the manner specified:

Jose I. Astigarraga, Esq., jia@astidavis.com
Hal M. Lucas, Esq., hlucas@astidavis.com
Astigarraga Davis Mullins & Grossman, P.A.
701 Brickell Avenue, 16th Floor
Miami, Florida 33131
Via transmission of Notices of Electronic Filing generated by CM/ECF

Scott S. Balber, Esq., SBalber@chadbourne.com
Robert E. Grossman, Esq., RGrossman@chadbourne.com
Chadbourne & Parke LLP
30 Rockefeller Plaza
New York, New York 10112
Via transmission of Notices of Electronic Filing generated by CM/ECF

**LAW OFFICES OF DAVID B. HABER, P.A.**
201 S. BISCAYNE BLVD., SUITE 1205, MIAMI, FLORIDA 33131

Respectfully submitted,

**DAVID B. HABER, P.A.**

By: _____/s/ Lindsey F. Thurswell_____.
    David B. Haber, Esq. (Fla. Bar No. 435368)
    Dhaber@dhaberlaw.com
    David T. Podein, Esq. (Fla. Bar No. 62038)
    Dpodein@dhaberlaw.com
    Lindsey F. Thurswell, Esq. (Fla. Bar No. 84747)
    Lthurswell@dhaberlaw.com
    201 S. Biscayne Blvd., Suite 1205
    Miami, Florida 33131
    Telephone:(305) 379-2400
    Facsimile: (305) 379-1106
    *Attorneys for Plaintiffs Rodovaldo*
    *Rody Gomez, Saby Gomez de Molina,*
    *and Rody Gomez  a/k/a Rody Gomez Jr.*