UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:11-CV-21155-MOORE/TORRES

RODOVALDO RODY GOMEZ, SABY GOMEZ
DE MOLINA, RODY GOMEZ A/K/A RODY
GOMEZ JR.,

                Plaintiffs,

v.

D.B. ZWIRN SPECIAL OPPORTUNITIES FUND
L.P.,

                Defendant.
_____/

**DEFENDANT'S REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF ITS MOTION TO DISMISS THE VERIFIED COMPLAINT**

      Defendant Fortress Value Recovery Fund I LLC f/k/a D.B. Zwirn Special Opportunities Fund, L.P. ("Defendant") respectfully submits this reply memorandum of law in further support of its motion to dismiss the Verified Complaint ("Complaint") filed by plaintiffs Rodovaldo Rody Gomez ("Rodovaldo"), Saby Gomez de Molina ("Saby"), and Rody Gomez a/k/a Rody Gomez Jr. ("Rody," and collectively, "Plaintiffs" or "Guarantors").

**PRELIMINARY STATEMENT**

      Plaintiffs' opposition to Defendant's motion to dismiss ("Opposition Brief" or "Opp. Br.") does nothing to cure the Complaint's fatal defects. Instead, Plaintiffs concede that they were not under duress when they signed the Settlement Agreement, and therefore, acknowledge that its express terms are binding. Without their legally infirm duress argument to lean on, Plaintiffs attempt to keep their claims alive by presenting gross misstatements of the law and conclusory allegations that are contradicted by the exhibits attached to Plaintiffs' own Complaint. Plaintiffs, however, still offer no reason why the New York Confessions of

Judgment should not be afforded full faith and credit. They do not dispute that they (i) agreed to litigate disputes arising out of the Settlement Agreement in New York, (ii) consented to jurisdiction in New York, and (iii) did not cure their breaches after receiving a Notice of Default. Plaintiffs further do not challenge Defendant's argument that the facts as alleged do not state causes of action for any of Plaintiffs' state law claims. For all these reasons, Plaintiffs' claims fail and the Complaint should be dismissed in its entirety.

## ARGUMENT

**I.    PLAINTIFFS FAIL TO ALLEGE THAT THE CONFESSIONS OF JUDGMENT WERE ENTERED WITHOUT JURISDICTION OR WITH EXTRINSIC FRAUD**

**A.    Plaintiffs Concede That They Did Not Sign the Settlement Agreement Or Its Attached Confessions of Judgment Under Economic Duress**

Plaintiffs do not credibly deny that the Settlement Agreement is valid and enforceable. Instead, they concede that "the allegations of the Plaintiffs' Verified Complaint do not allege duress to avoid the terms of the Settlement Agreement" and "the Plaintiffs do not seek to invalidate the Settlement Agreement." (Opp. Br. 7.) Indeed, the Complaint fails to assert any facts sufficient to establish duress or that Defendant had threatened Plaintiffs with any unlawful act that compelled any performance by Plaintiffs. See Chase Manhattan Bank v. New York, 13 A.D.3d 873, 874 (N.Y. App. Div. 2004); see also Peralta v. Peralta Food, Corp., 506 F. Supp. 2d 1274, 1280 (S.D. Fla. 2007). Therefore, the terms of the Settlement Agreement and Confessions of Judgment are binding on Plaintiffs.

**B.    Plaintiffs Consented To Jurisdiction In New York**

Because Plaintiffs consented to personal jurisdiction in New York, Plaintiffs' assertion that the New York court did not have jurisdiction to enter the Confessions of Judgment against them is meritless. Plaintiffs' challenge to personal jurisdiction is premised on an invented legal standard whereby even though Plaintiffs "consented to jurisdiction . . . in order for

2

the New York Court to enter the Foreign Judgments against the Plaintiffs, minimum contacts is [sic] still required to afford Plaintiffs their due process rights." (Opp. Br. 7-8.) This novel theory of personal jurisdiction is unfounded and should be disregarded.

Minimum contacts with New York are not required to satisfy due process concerns if a party consents to jurisdiction in New York. See Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585 (1991); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Barnum, 162 Misc 2d 245, 250 (Sup. Ct. N.Y. County 1994) ("In general, New York courts may obtain personal jurisdiction over a party based on (1) domicile in New York (CPLR 301), (2) 'consent' to jurisdiction in New York, *or* (3) the long arm statute (CPLR 302)." (emphasis added)). Plaintiffs do not dispute that they consented to personal jurisdiction in New York when they signed the Settlement Agreement and Confessions of Judgment. (See generally Opp. Br.; Confession of Judgment ¶¶ 5, 6.)

Instead, Plaintiffs assert that their consent to jurisdiction is meaningless because they purportedly do not have minimal contacts with New York. (See Opp. Br. 8, 13, 14.) In support of their theory, Plaintiffs rely on the holding in Diamond Crystal Brands, Inc. v. Food Movers Intern., Inc., 593 F.3d 1249, 1268 (11th Cir. 2010), (Opp. Br. 8), and Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985), (Opp. Br. 14). However, Diamond Crystal Brands is inapposite because the case makes no mention of any party's consent to jurisdiction, and only discusses Georgia law. See 593 F.3d at 1257-58. In addition, Plaintiffs' recitation of the holding in Burger King Corp. is unequivocally the opposite of the Supreme Court's actual holding.[1] (See Compl. ¶ 13; Opp. Br. 14.) Instead, the Supreme Court in Burger King Corp. stated:

---

[1] Plaintiffs misrepresent that the Supreme Court held "that an out of state defendant's consent to a contractual jurisdiction provision conferring jurisdiction out of state is not sufficient to

(Cont'd on following page)

> "We have noted that, because the personal jurisdiction requirement is a waivable right, [and] there are a variety of legal arrangements by which *a litigant may give express or implied consent to the personal jurisdiction of the court* . . . . Where such forum-selection provisions have been obtained through freely negotiated agreements and are not unreasonable and unjust, *their enforcement does not offend due process*."

471 U.S. at 473 n.14 (emphasis added) (internal citations and quotations omitted).[2]

Moreover, despite Plaintiffs' assertion that they had "no contacts whatsoever with New York," (Opp. Br. 14), the Complaint alleges that Plaintiffs dealt extensively with Defendant and New York (See Mot. to Dismiss 13). Therefore, Plaintiffs had sufficient minimum contacts to demonstrate that they "purposefully availed" themselves of the laws of New York, and the New York court had jurisdiction. See Fischbarg v. Doucet, 9 N.Y.3d 375, 383-84 (2007).

**C.     Plaintiffs Have Failed To Allege Extrinsic Fraud**

Plaintiffs assert that the Confessions of Judgment were entered due to extrinsic fraud because (i) "the Notice of Default itself was inherently defective and violated the terms of the Settlement Agreement," (Opp. Br. 13); (ii) "Defendant still has failed to state and/or indicate how the Plaintiffs defaulted under the Settlement Agreement," (id. 12); (iii) Plaintiffs "complied by responding to the Notice of Default within one (1) day of receiving same," (id. 13, see also id. 15.); and (iv) Plaintiffs' default was due to a "technical default" (Id. 15). However, none of these conclusory assertions are supported by any factual allegations in the Complaint. Because

---

(Cont'd from preceding page)

  establish personal jurisdiction absent satisfaction of the minimum contacts test." (Opp. Br. 14.)

[2] In addition to misrepresenting the holding in Burger King Corp., Plaintiffs purportedly quote from the New York confession of judgment statute, NY CPLR 3218, two separate times. (See Opp. Br. 12-13; 13.) However, none of the language from either of these quotes appears anywhere in the statute. See generally NY CPLR 3218. Therefore, Plaintiffs' attempt to support their positions with fictitious precedent should be disregarded.

Plaintiffs were not deprived of any opportunity to assert a full and fair defense, Plaintiffs have failed to allege extrinsic fraud. See Altman v. Altman, 150 A.D.2d 304, 306 (N.Y. App. Div. 1989).

Plaintiffs' Complaint nowhere states that Defendant allegedly failed to comply with the express terms of the Settlement Agreement for providing Notice of Default and an opportunity to cure before filing the Confessions of Judgment. (See Compl. ¶¶ 23, 24, 29; Mot. to Dismiss 14-15.) The Settlement Agreement details when an event of default occurs, as determined in Defendant's sole discretion, (see Settlement Agreement § 6(a)); the procedure for sending a Notice of Default, (id. § 15); and the number of days allowed for Plaintiffs to "cure," as determined in Defendant's sole discretion (Id. § 5(b)). Furthermore, the Notice of Default attached to the Complaint explains exactly how Plaintiffs defaulted: Plaintiffs "violated §§4(a), (d), (e), & (g) of the Settlement Agreement, by inter alia, intentionally withholding from [Defendant] significant portions of the Specified Collateral (including numerous vehicles owned by Borrowers at the time the Settlement Agreement was executed)." (See Notice of Default.)

The Confessions of Judgment are further enforceable because Plaintiffs did not cure after one business day of written notice. (See Compl. ¶ 29.) Contrary to Plaintiffs' assertion, merely "responding" to the Notice of Default is not synonymous with "curing" as determined by Defendant in its "sole discretion." (See Settlement Agreement § 5(b).) Moreover, Plaintiffs responded *two* businesses days after first receiving written notice on February 1, 2011. (See Compl. ¶¶ 23, 29.) Finally, unlike the defaulting party in Bank of New York v. Forlini, Plaintiffs have not alleged a mere "technical default" because they received notice and notified Defendant of their decision not to cure. See 220 A.D.2d 377, 378 (N.Y. App. Div. 1995).

5

## II. THE SETTLEMENT AGREEMENT BARS THE INSTANT ACTION AND REQUIRES THE APPLICATION OF NEW YORK LAW

Plaintiffs argue that the Settlement Agreement does not bar the instant action because they were "requir[ed]" to bring the instant lawsuit in Florida pursuant to a Florida procedural statute. (Opp. Br. 10.) The binding and valid Settlement Agreement, however, unambiguously states that "[t]his Agreement *shall* be governed by the laws of the State of New York . . . [and all] disputes arising out of or related to this Agreement *shall* be submitted to the [New York] state and federal courts . . . ." (Settlement Agreement § 19.) Contrary to Plaintiffs' contentions, Fla. Stat. § 55.509 is not a cause of action -- it is a procedural statute pursuant to which a plaintiff *may* bring a cause of action to challenge a foreign judgment. Plaintiffs *chose* to challenge the validity of the New York judgments by filing a cause of action in Florida court, seeking declaratory and other relief, pursuant to Fla. Stat. § 55.509. (See Compl. 15.) In addition, Plaintiffs *chose* to file four additional common law claims unrelated to Fla. Stat. § 55.509 in Florida court. However, nothing in Fla. Stat. § 55.509 prevents Plaintiffs from challenging the validity of the New York judgments or filing common law causes of action in a New York court as *required* by the Settlement Agreement. See Fla. Stat. § 55.509(1).

Despite failing to raise the issue in their fully briefed Opposition to Defendant's Amended Motion to Transfer, (see DE #28), Plaintiffs also now argue for the first time that the Forum Selection Clause is "unjust, unreasonable and against the public policy in the State of Florida." (Opp. Br. 9.) However, this argument is meritless for the same reasons discussed in Defendant's Amended Motion to Transfer, (DE #9), and Reply Memorandum (DE #34).

In addition, the Choice of Law Clause applies to the instant dispute. Contrary to Plaintiffs' assertion that their claims somehow arise out of or are related to their filing of a single cause of action pursuant to Fla. Stat. § 55.509, (Opp. Br. 10-11), every single one of Plaintiffs'

six causes of action, including Plaintiffs' common law claims, arises out of Plaintiffs' challenge to the Settlement Agreement's enforceability, and the specific actions that Defendant had taken in compliance, or purported non-compliance, with the Settlement Agreement. (See generally Am. Mot. to Transfer 5-6.) Accordingly, New York law applies to this dispute.

Moreover, pursuant to the binding Release Clause, Plaintiffs unconditionally released Defendant from any and all subsequent claims it may have against Defendant. (See Settlement Agreement § 11.) Plaintiffs offer no colorable explanation regarding why their claims are not barred by the Release Clause, and accordingly, the Complaint should be dismissed in its entirety.

### III. PLAINTIFFS' CONCLUSORY ALLEGATIONS AND CONCLUSIONS OF LAW SHOULD NOT BE ACCEPTED AS TRUE AND SHOULD BE DISREGARDED

In an effort to overcome the undeniable implications of the Settlement Agreement, Plaintiffs provide a list of allegations that purportedly "must be deemed admitted for purposes of ruling on the Motion to Dismiss." (Opp. Br. 4.) Plaintiffs are mistaken. "In considering a motion to dismiss . . . '[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal.'" Bell v. J.B. Hunt Transp., Inc., 2011 U.S. App. LEXIS 10290, at *4-5 (11th Cir. 2011) (quoting Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1263 (11th Cir. 2004)). Unsupported by any factual allegations, and in several instances contradicted by the Opposition Brief itself, many of these assertions are nothing more than conclusory allegations and conclusions of law that should be disregarded.

For example, Plaintiffs assert that the Court must accept as fact that the Settlement Agreement was "executed by the Plaintiffs under duress," (Opp. Br. 4), yet Plaintiffs admit that the Complaint fails to allege duress (Id. 7). Similarly, Plaintiffs attempt to plead conclusions of law or bald allegations as fact including that the Settlement Agreement "included the ***ridiculous/non-negotiable and legally unsupportable provision*** that Defendant could declare a

default in its sole discretion and that the Plaintiff would only have one (1) day to cure" (id. (emphasis added)); that "the Plaintiffs had no minimum contacts with New York" (id. at 5); and that "the Corporations and Plaintiffs complied with the terms of the Settlement Agreement" (Id.).

Furthermore, several assertions are also contradicted by exhibits attached to the Complaint. For example, Plaintiffs misleadingly assert as fact that: "In the Notice of Default, Defendant merely alleged that RODOVALDO 'intentionally withheld significant portions of specified collateral' . . . To date, Defendant has failed to identify what the specified collateral is alleged to be 'withheld'. . . ." (Opp. Br. 5.) However, the Notice of Default actually states:

> "Borrowers and/or Guarantors have violated §§ 4(a),(d), (e), & (g) of the Settlement Agreement by, inter alia, intentionally withholding from [Defendant] significant portions of the Specified Collateral (including numerous vehicles owned by Borrowers at the time the Settlement Agreement was executed)."

(Notice of Default.) Moreover, Defendant further explained to Plaintiffs' attorney that "as your clients surely know there were more than 275 vehicles identified in the Borrowers' inventories that were not turned over to [Defendant]." (See Ltr. From S. Balber to D. Haber, attached to Complaint (DE #1 Ex. B), at DE #1 Ex. C-1 at 52.) Accordingly, the Court should disregard all conclusory allegations and conclusions of law, as well as inconsistent allegations that conflict with the incorporated exhibits. See Crenshaw v. Lister, 556 F.3d 1283, 1292 (11th Cir. 2009) ("[W]hen the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." (quotations and citations omitted)).

IV. **RODY'S BANKRUPTCY IS AN ENFORCEABLE EVENT OF DEFAULT**

Contrary to Plaintiffs' contention that ipso facto clauses are unenforceable in *any* contract, (Opp. Br. 17), the Settlement Agreement's ipso facto bankruptcy clause is enforceable. Ipso facto bankruptcy clauses are generally unenforceable because "the automatic termination of a debtor's contractual rights deters rehabilitation and causes a forfeiture of assets." In re Enron

8

Corp., 306 B.R. 465, 472 (Bankr. S.D.N.Y. 2004); see 11 U.S.C. §§ 365(e), 541(c). However, such clauses are not prohibited in non-executory contracts. See St. Vincent's Catholic Med. Cents. of New York, 440 B.R. 587 (Bankr. S.D.N.Y. 2010). A non-executory contract exists where at least one party has fully performed its obligations. See id. at 601; In re Peralta Food Corp., No. 07-16508, 2008 WL 190503 (Bankr. S.D. Fla. Jan. 18, 2008) (finding settlement agreement was not an executory contract because only one party had obligations remaining).

Here, the Settlement Agreement is not an executory contract and the ipso facto bankruptcy clause is enforceable. Defendant had fully performed its material obligations under the Settlement Agreement at the time the bankruptcy petition was filed when it released Plaintiffs from their outstanding obligations under the Financing Agreement. See St. Vincent's, 440 B.R. at 601. Moreover, Plaintiffs assert that they too fully complied with the Settlement Agreement by the time the bankruptcy petition was filed. (See Compl. ¶ 21.)

Furthermore, Plaintiffs' argument that Defendant cannot credibly claim that it did not receive notice of Rody's bankruptcy, but that the bankruptcy is a breach of the Settlement Agreement, is illogical. Defendant does not assert that Rody's Bankruptcy Proceeding "is the actual ground/cause for the Notice of Default." (See Opp. Br. 17.) Instead, Defendant argues in the alternative that Rody additionally triggered an event of default against all Plaintiffs due to a bankruptcy that he never informed Defendant about. (See Mot. to Dismiss 5, 15-16.)

## V.   PLAINTIFFS FAIL TO STATE A CLAIM FOR THE COMMON LAW CLAIMS

Finally, Plaintiffs have ignored Defendant's argument that the causes of action for defamation, abuse of process, and fraud fail to state a claim upon which relief can be granted. In response, Plaintiffs argue nothing more than the conclusory statement that "the factual allegations in the Complaint clearly state causes of action for defamation, breach of covenant of good faith and fair dealing, abuse of process, and fraud." (Opp. Br. 4.)

9

The defamation claim fails because Plaintiffs have failed to allege a single published false statement, and moreover, any statements made in the course of obtaining or recording the judgments against Plaintiffs would be absolutely privileged.  See Dillon v. City of N.Y., 261 A.D.2d 34, 38 (N.Y. App. Div. 1999); Sinrod v. Stone, 20 A.D.3d 560, 561 (N.Y. App. Div. 2005).  The abuse of process claim fails because the Complaint does not allege that Defendant issued process without justification.  See Julian J. Studley, Inc. v. Lefrak, 41 N.Y.2d 881, 883-84 (1977).  The fraud claim also fails because Plaintiffs neither plead fraud with particularity nor allege that Defendant made any false statements upon which Plaintiffs relied.  See Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993); N.Y. Univ. v. Cont'l Ins. Co., 87 N.Y.2d 308, 318 (N.Y. 1995).  Any such claims would also be barred by the Settlement Agreement's Release Clause.  See Rubycz-Boyar v. Mondragon, 15 A.D.3d 811, 812 (N.Y. App. Div. 2005).

At most, Plaintiffs argue that "Defendant's conduct constitutes a breach of the Defendant's duty of good faith and fair dealing under the terms of the Settlement Agreement" by taking five actions purportedly "not permitted by the Settlement Agreement."  (See Opp. Br. 16.)  However, these "violations" are neither supported by any facts in the Complaint nor relevant to the parties' compliance with the Settlement Agreement.  As discussed above, Plaintiffs failed to allege that Defendant took any actions that were not permitted by the express terms of Settlement Agreement.  See Chrysler Credit Corp. v. Dioguardi Jeep Eagle, Inc., 192 A.D.2d 1066 (N.Y. App. Div. 1993).  "The implied obligation of good faith cannot be used to vary the terms of an express contract."  City of Riviera Beach v. John's Towing, 691 So. 2d 519, 521 (Fla. 4th DCA 1997) (finding no breach of good faith and fair dealing where contract was unambiguous).

CASE NO. 1:11-CV-21155-MOORE/TORRES

**CONCLUSION**

Defendant respectfully requests that the Court grant its motion to dismiss the Verified Complaint, with prejudice, and grant Defendant such other relief as deemed just and proper.

Dated:   June 13, 2011

Respectfully submitted,

By   /s/ Hal M. Lucas
Gregory S. Grossman
(Fla. Bar No.: 896667)
ggrossman@astidavis.com
Hal M. Lucas
(Fla. Bar No.: 0853011)
hlucas@astidavis.com
ASTIGARRAGA DAVIS MULLINS &
   GROSSMAN, P.A.
701 Brickell Avenue, 16th Floor
Miami, Florida  33131
Telephone: (305) 372-8282
Facsimile:  (305) 372-8202

-and-

Scott S. Balber*
sbalber@chadbourne.com
CHADBOURNE & PARKE LLP
30 Rockefeller Plaza
New York, NY  10112
Telephone: (212) 408-5100
Facsimile:  (212) 541-5369

*Admitted Pro Hac Vice

*Counsel for Defendant Fortress Value
   Recovery Fund I LLC f/k/a D.B. Zwirn
   Special Opportunities Fund, L.P.*

CASE NO. 1:11-CV-21155-MOORE/TORRES

## CERTIFICATE OF SERVICE

**I hereby certify** on June 13, 2011, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system.  I further certify that the foregoing document is being served this day on the following counsel in the manner specified.

*/s/ Hal M. Lucas*
Hal M. Lucas

## SERVICE LIST

David B. Haber
dhaber@dhaberlaw.com
David Thomas Podein
dpodein@dhaberlaw.com
Lindsey Fallon Thurswell
lthurswell@dhaberlaw.com
LAW OFFICES OF DAVID B. HABER, P.A.
201 S. Biscayne Boulevard
Suite 1205
Miami, Florida  33131
Telephone: (305) 379-2400
Facsimile:  (305) 379-1106

*Counsel for Plaintiffs Rodovaldo Rody
    Gomez, Saby Gomez de Molina, and
    Rody Gomez  a/k/a Rody Gomez Jr.*

Served Via Notice of Electronic Filing
    generated by CM/ECF